IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GERALD THOMAS BOSWELL,
       Petitioner,

vs.                                  Case No.:  3:11cv352/RV/EMT

MICHAEL D. CREWS,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 15).  Respondent filed an answer and relevant portions of the state court record (doc. 27).  Petitioner filed a reply (doc. 33).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is entitled to relief on two of his claims.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 27).[1]  Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2007-CF-205, with one count of robbery without a weapon (Ex. U at 9).  On August

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 27).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2, 2007, Petitioner entered a written Plea and Sentence Agreement which provided: (1) Petitioner would plead nolo contendere to robbery under Florida Statutes § 812.131(2)(b), (2) adjudication of guilt would be at the discretion of the court, (3) a pre-sentence report would be ordered by the court, (4) sentence would be imposed as soon as possible, and (5) the State intended to seek an enhanced sentence (*id.* at 25–29). On September 11, 2007, Petitioner was adjudicated guilty of the offense charged in the information, robbery without a weapon, and sentenced to fifteen (15) years of imprisonment, with pre-sentence jail credit of 238 days (*id.* at 79–84). Petitioner filed a Motion to Enforce Plea Agreement (Ex. A at 1–4). The trial court denied the motion in an order rendered December 13, 2007 (*id.* at 8–11). Petitioner appealed the December 13, 2007 order to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-0626 (Ex. A at 14, Ex. B at 80, Ex. C). The First DCA affirmed the lower court without written opinion, with the mandate issuing November 3, 2008 (Exs. I, L). Boswell v. State, 992 So. 2d 253 (Fla. 1st DCA 2008) (Table).

On November 4, 2008, Petitioner filed a petition for belated appeal of the judgment and sentence in the First DCA, Case No. 1D08-5480 (Ex. M). The First DCA granted the petition on February 17, 2009 (Ex. R). Boswell v. State, 4 So. 3d 691 (Fla. 1st DCA 2009) (Mem). The First DCA assigned Case No. 1D09-1333 to the direct appeal (*see* Ex. W). On March 16, 2009, prior to filing an initial brief, Petitioner filed a pro se motion to correct sentencing error in the circuit court, pursuant to Rule 3.800(B)(2) of the Florida Rules of Criminal Procedure (Ex. V at 197–209). The circuit court denied the motion on March 24, 2009 (*id.* at 212–14). The circuit court appointed counsel to represent Petitioner on direct appeal (*id.* at 219–23). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. W). Petitioner filed a pro se initial brief (Exs. Y, Z). The First DCA affirmed the judgment without written opinion on June 3, 2010 (Ex. AA). Boswell v. State, 39 So. 3d 322 (Fla. 1st DCA 2010) (Table).

On August 26, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. DD at 1–23). The state circuit court summarily denied the motion on February 9, 2011 (*id.* at 124–27). Petitioner appealed the decision to the First DCA, Case No. 1D11-934 (Ex. EE). The First DCA affirmed the judgment per curiam without written

opinion on May 3, 2011, with the mandate issuing July 14, 2011 (Exs. GG, HH).  Boswell v. State, 64 So. 3d 680 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on July 22, 2011 (doc. 1).  Respondent does not assert a statute of limitations defense (doc. 27 at 22).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).     The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent

on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

      If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is

in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson,

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial . . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250

F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

## IV.    PETITIONER'S CLAIMS

Ground One:  "The state trial court violated Petitioner's right to represent himself as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution."

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner alleges the trial court violated his constitutional right to self-representation on June 13, 2007, when the court reappointed a public defender and ordered him to conduct discovery on Petitioner's behalf over Petitioner's objection (doc. 15 at 15). Petitioner alleges the court again violated his right to self-representation on August 2, 2007, when the court involved the public defender in plea negotiations, which led to the public defender's involvement in the sentencing proceeding on September 1, 2007 (*id.*).

Respondent concedes Petitioner raised this claim on direct appeal of his conviction, and the First DCA affirmed the judgment (doc. 27 at 23). Respondent contends the state court's adjudication is entitled to deference (*id.* at 27–44).

1.      Clearly Established Federal Law

"The Sixth and Fourteenth Amendments of [the] Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." <u>Faretta v. California</u>, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527, 45 L. Ed. 2d 562 (1975). The Sixth Amendment, however, also includes the right to self-representation. *Id.*, 422 U.S. at 831–32. The Supreme Court has held that, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotations and citation omitted); *see also* <u>Patterson v. Illinois</u>, 487 U.S. 285, 298, 108 S. Ct. 2389, 2398, 101 L. Ed. 2d 261 (1988). The Supreme Court also recognized that a defendant's right to represent himself, if he voluntarily elects to do so, "does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel." *See* <u>Wheat v. United States</u>, 486 U.S. 153, 159 n.3, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

In <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 172, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984), the Supreme Court addressed whether a defendant's Sixth Amendment right to conduct his own defense was violated by the unsolicited participation of standby counsel. The Court stated:

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury

at appropriate points in the trial.  The record reveals that Wiggins was in fact accorded all of these rights.

465 U.S. at 174.  The Court continued:

> In our view, both <u>Faretta</u>'s logic and its citation of the <u>Dougherty</u> case [<u>United States v. Dougherty</u>, 473 F.2d 1113 (D.C. Cir. 1972)] indicate that no absolute bar on standby counsel's unsolicited participation is appropriate or was intended.  The right to appear pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense.  Both of these objectives can be achieved without categorically silencing standby counsel.
>
> In determining whether a defendant's <u>Faretta</u> rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way.  <u>Faretta</u> itself dealt with the defendant's affirmative right to participate, not with the limits on standby counsel's additional involvement.  The specific rights to make his voice heard that Wiggins was plainly accorded, *see supra*, at p. 949, form the core of a defendant's right of self-representation.

*Id.* at 176.  In the trial context, the Court noted:

> . . . <u>Faretta</u> rights are adequately vindicated in proceedings outside the presence of the jury if the pro se defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the pro se defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.

*Id.* at 179.  The Court further explained:

> In measuring standby counsel's involvement against the standards we have described, it is important not to lose sight of the defendant's own conduct.  A defendant can waive his <u>Faretta</u> rights. Participation by counsel with a pro se defendant's express approval is, of course, constitutionally unobjectionable.  A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense.  Such participation also diminishes any general claim that counsel unreasonably interfered with the defendant's right to appear in the status of one defending himself.
>
> Although this is self evidence, it is also easily overlooked.  A defendant like Wiggins, who vehemently objects at the beginning of trial to standby counsel's very presence in the courtroom, may express quite different views as the trial progresses.  Even when he insists that he is not waiving his <u>Faretta</u> rights, a pro se defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably.

*Id.* at 182.  Finally, the Court also observed:

Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.

*Id.* at 183.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Error I in his Rule 3.800 motion (Ex. V at 201–03). The state circuit court adjudicated the claim as follows:

First, Defendant alleges the trial court violated Defendant's due process rights by denying Defendant the right to represent himself . . . . The Court conducted a Nelson [Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973)] inquiry at several hearings in order to determine if Defendant was able to represent himself in this case, and ultimately decided the Assistant Public Defender appointed to represent Defendant should remain as Defendant's attorney.

(Ex. V at 212–13). Petitioner appealed the decision to the First DCA by including it as Issue II on direct appeal of his conviction (Ex. Y at 25–31). The First DCA affirmed the judgment per curiam without written opinion (Ex. AA).

In determining whether the state court unreasonably applied Supreme Court precedent, this court looks to the Eleventh Circuit's interpretation of the relevant Supreme Court law. The Eleventh Circuit held that the right to counsel "is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does 'not attach unless and until it [i]s asserted.'" Stano v. Dugger, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc) (quoting Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986)). Waiver of the right to counsel and invocation of the correlative right to self-representation is no simple matter, however, and two requirements must be met. First, the defendant must "clearly and unequivocally" assert his desire to represent himself thus waiving his right to counsel. Second, the court must determine that the defendant has made this election "knowingly and intelligently." However, to invoke his Sixth Amendment right under Faretta, a defendant must unambiguously state his request to represent himself, either orally or in writing, so that no reasonable person can say that the request was not made. Dorman, 798 F.2d at 1366. Because of the gravity of the accused's decision, his request to proceed pro se must be clear and unequivocal. Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) (defendant did not clearly and unequivocally request to represent himself and waive counsel where

defendant seemingly requested to proceed pro se, but clarified the nature of his request by explaining that he essentially wished to act as co-counsel) (citations omitted); *see also* <u>Stano</u>, 921 F.2d at 1145 (<u>Faretta</u> inapplicable where defendant did not assert or even "faintly request" right to self-representation, and his conduct showed that he never envisioned representing himself).    Once there is a clear assertion of the right to self-representation, the court should conduct the <u>Faretta</u> hearing. <u>Raulerson v. Wainwright</u>, 732 F.2d 803, 808 (11th Cir. 1984).  Indeed, "[t]he ideal method of assuring that a waiver of counsel is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation." <u>United States v. Cash</u>, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing <u>Strozier v. Newsome</u>, 926 F.2d 1100, 1104 (11th Cir. 1991) ("<u>Strozier II</u>")).  This helps to establish that the defendant unambiguously has chosen to represent himself. <u>Cross</u>, 893 F.2d at 1291.  "While a pretrial hearing is preferred, it is not required. . . . The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the 'rare cases [where] the record may support a waiver.'" <u>Cash</u>, 47 F.3d at 1088 (quoting <u>United States v. Fant</u>, 890 F.2d 408, 409 (11th Cir. 1989) (per curiam)).

Courts should not "quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense." <u>Brown v. Wainwright</u>, 665 F.2d 607, 610 (Former 5th Cir. 1982) (full bench en banc) (citing <u>Brewer v. Williams</u>, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424 (1976) (courts must indulge every reasonable presumption against waiver of counsel)). Equally, a defendant who initially requests to waive counsel may subsequently abandon or waive the waiver. <u>Dorman</u>, 798 F.2d at 1367 (citing <u>Brown</u>, 665 F.2d at 611).  This may be accomplished through the defendant's request or deduced from his conduct reasonably showing that he has abandoned his original request. *Id.* For example, a defendant who vacillates on the issue or continues to seek the benefit of representation may be found to have relinquished his request to represent himself. *Id.* (citing <u>Brown</u>, 665 F.2d at 612).  Additionally, a defendant may waive his right of self-representation by electing to act as co-counsel. <u>Raulerson</u>, 732 F.2d at 809 (citing <u>Brown</u>, 665 F.2d at 611; <u>Chapman v. United States</u>, 553 F.2d 886, 893 n.12 (5th Cir. 1977)).

While the accused need not "continually renew his request to represent himself even after it is conclusively denied," the request may be considered abandoned if the court leaves the matter open and the defendant fails to re-assert his request. <u>Brown</u>, 665 F.2d at 611.  In <u>Brown</u>, the trial court

expressed doubt as to the ability of the defendant to carry on his own defense and, therefore, deferred ruling on the request and directed counsel to attempt to resolve the difficulties with his client. *Id.* at 609. Because the defendant began to again work with counsel and never renewed his request to proceed pro se despite ample opportunity to do so, he was held to have abandoned his request altogether. *Id.* at 611.

In the instant case, the record reflects that at a pre-trial hearing on June 4, 2007, defense counsel, Mr. Haug, announced to the court that Petitioner told him he did not want him to be his attorney any longer (Ex. B at 15). The following exchange occurred:

> MR. BOSWELL: I got the right to a competent, effective counsel though, right, your Honor?

> THE COURT: That's right. You got one. If you don't like that one, if you're smart enough I'll let you represent yourself—if you know enough about the law—but I doubt that you do. You want this lawyer or no lawyer?

> MR. BOSWELL: I don't want Marty [Mr. Haug] to represent me, your Honor.

> THE COURT: Well, you don't have a choice. He's been appointed to represent you. He's a member of the Florida Bar. He's had a lot of experience. He's tried cases. I've already determined he's competent to represent you. I know you'd like Roy Black from Miami to fly up here, but he costs $100,000 and you don't have it.

> MR. BOSWELL: Under the circumstances then, I'll represent myself.

(Ex. B at 16). The court then inquired as to Petitioner's age, education, legal training, experience in representing himself in other legal matters, and his understanding of basic legal principles of criminal law (for example, the State's burden of proof and the presumption of innocence) (*id.* at 16–19). At the conclusion of this inquiry, the court again asked Petitioner if he wished to represent himself, and Petitioner stated he did (*id.* at 18–19). The court further inquired, "Would you like Mr. Haug to standby and sit with you and help if you need him?" (*id.* at 19). Petitioner responded, "That would be wonderful, your Honor." (*id.*).

The court held another pre-trial hearing nine days later, on June 13, 2007, to reconsider its denial of Petitioner's request to discharge counsel and appoint new counsel, and to conduct the appropriate inquiry into Petitioner's reasons for wishing to discharge counsel (Ex. B at 25–57). After

this inquiry, the court determined that defense counsel had rendered reasonable assistance and denied Petitioner's request to discharge counsel (*id.* at 27–36). The court inquired of Petitioner whether he wished to represent himself, and Petitioner responded he did not (*id.* at 36–41).

At a pre-trial hearing on August 2, 2007, the court inquired of Petitioner whether he wished to proceed with counsel or represent himself (Ex. B at 43–44). Petitioner responded, "I asked to represent myself and you denied that. My position has not changed." (*id.* at 45). The court again inquired as to Petitioner's age, education, legal training, experience in representing himself in other legal matters, and his understanding of basic legal principles of criminal law and evidentiary rules (*id.* at 48). The court asked whether Petitioner understood he would be at a serious disadvantage representing himself at trial, which was just days away, and Petitioner responded, "I hear you, your Honor, I hear you." (*id.* at 48). Before the court could conclude its inquiry, Petitioner proposed a plea agreement, and the prosecutor stated she had no objection to the proposal (*id.* at 49). The court instructed Mr. Haug to review the plea agreement with Petitioner, and Petitioner did not object (*id.* at 51–52). After a recess, the court conducted a plea colloquy and set a sentencing hearing (*id.* at 52–56). Petitioner did not object to Mr. Haug's participation in the plea proceedings (*id.*). At the sentencing hearing, Mr. Haug represented Petitioner, with no objection from Petitioner (*id.* at 59–75).

The record shows that Petitioner initially waived his right to counsel and requested to proceed pro se. However, his statements and conduct during his subsequent dialogue with the court reasonably suggest he abandoned his original waiver of counsel and his request to represent himself. For example, at the June 4 hearing, when Petitioner first invoked his right to self-representation, Petitioner readily accepted Mr. Haug's serving as standby counsel.[7] Furthermore, near the end of the dialogue on August 2, 2007, while the court was assessing Petitioner's ability to represent himself and asked if Petitioner understood he would be at a serious disadvantage representing himself at trial, Petitioner acknowledged the disadvantage stating, "I hear you," and then steered the discussion away from the issue of self-representation to the issue of a plea agreement. When the court asked Mr. Haug to

---

[7] As previously noted, a defendant's agreement to proceed with the assistance of an attorney waives his request to proceed pro se unless and until he reasserts his right of self-representation. Raulerson, 732 F.2d at 809 (citing Brown, 665 F.2d at 611; Chapman, 553 F.2d at 893 n.12).

participate in the plea negotiation process, Petitioner did not object to Mr. Haug's participation, nor did he ever mention again a desire to represent himself.

Additionally, the trial court's dialogue with Petitioner elicited sufficient information from which the court could determine whether Petitioner's waiver of counsel was knowing and intelligent, thus fulfilling the purpose of <u>Faretta</u>. Petitioner's statements and conduct during that dialogue, most importantly his equivocating as to whether he wished to represent himself, his acceptance of Mr. Haug's role as standby counsel, and his acknowledgment that he would be at a disadvantage representing himself, provided a sufficient basis to conclude that a waiver of counsel was not knowing and intelligent.

Petitioner failed to demonstrate that the state court's denial of his <u>Faretta</u> claim was contrary to or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief on Ground One.

B.  <u>Ground Two: "The state trial court violated Petitioner's right to due process of law as guaranteed by Fifth, and Fourteenth Amendments of the United States Constitution."</u>

<u>Ground Three: "The state trial court violated Petitioner's protection against double jeopardy as guaranteed by Fifth, and Fourteenth Amendments of the United States Constitution."</u>

Petitioner contends the trial court violated his federal due process right by convicting him of robbery without a weapon, a violation of Florida Statutes § 812.13(2)(c), without a voluntary, knowing, and intelligent guilty plea to that charge, or a finding of guilt by a jury (doc. 15 at 16). He also contends the court violated the constitutional prohibition against double jeopardy by convicting him of that offense and sentencing him to fifteen (15) years in prison, after the court had accepted his nolo contendere plea to the offense of robbery by sudden snatching without a deadly weapon, a violation of Florida Statutes § 812.131(2)(b), which carried a maximum punishment of only five (5) years (*id.*). Petitioner states he raised these claims on direct appeal of his conviction and in his Rule 3.850 motion (*id.*).

Respondent contends to the extent Petitioner claims that his plea was not knowing, intelligent, and voluntary, Petitioner failed to fairly present his claim to the state courts (doc. 27 at 44–47, 61). Respondent states Petitioner argued in his motion to enforce the plea agreement that the terms of the plea agreement provided he would plead nolo contendere to the offense of robbery by sudden

snatching, and the court accepted the plea, which "placed [him] in jeopardy" by accepting the plea, but then violated the plea agreement by sentencing him to robbery as charged (*id.* at 45). Respondent further asserts Petitioner appealed the circuit court's denial of the motion to enforce the plea agreement (*id.*). Respondent argues Petitioner never presented a claim that his plea was unknowing and involuntary; therefore, that claim is unexhausted and procedurally barred (*id.* at 46–47, 61). Respondent then argues Petitioner's claims do not relate to the knowing and voluntary nature of the plea, and are not jurisdictional; therefore, he waived any other constitutional challenges to his conviction by entering a plea (*id.* at 47–48).

Respondent further contends Petitioner's due process claim is without merit (doc. 27 at 48–59). Respondent asserts there was no contract for Petitioner to enter a plea to a lesser offense, because the prosecutor did not sign the plea agreement, but signed only the "DNA acknowledgment" (doc. 27 at 48–59). Further, there was no "meeting of the minds" with respect to Petitioner's entering a plea to a lesser charge, as evidenced by the prosecutor's repeated reference to the crime as robbery without a weapon, a second degree felony, punishable by 15 years of imprisonment (*id.*). Further, the trial court was without authority to accept a plea to a lesser included offense without the prosecutor's express agreement to dismiss the greater charge in favor of the lesser included offense (*id.*). Therefore, Petitioner essentially entered an open plea to the charged crime (*id.*).

Respondent additionally argues the record supports the conclusion that Petitioner knew he was pleading to the charge of robbery without a weapon and that he could and would receive a 15-year prison sentence (*id.*). Respondent asserts Petitioner never indicated to the trial court that he understood he was pleading to a lesser included offense with a maximum sentence of 5 years, nor did Petitioner correct defense counsel when counsel announced Petitioner was pleading no contest "as charged on the robbery" (*id.*). Further, Petitioner never interjected when the prosecutor repeatedly referred to the crime as robbery without a weapon, a second degree felony, punishable by 15 years imprisonment (*id.*). Moreover, at the sentencing hearing, Petitioner never corrected the misunderstanding he asserts occurred during the hearings (*id.*). Respondent argues Petitioner "played a game of hide the ball and now expects to be rewarded for his deception." (*id.*). Respondent argues Petitioner's "attempt to inject error by intentionally misleading all of the parties involved when he placed a different statute number on the plea form" is not a basis for a due process violation (*id.*).

Respondent contends Petitioner is not entitled to relief, "because his hands are unclean" due to his deliberately distorting the proceedings and misleading the court (*id.*).

With regard to Petitioner's double jeopardy claim, Respondent argues the claim is premature "unless or until the State proceeded to sentencing again against Petitioner for the greater crime should this Court grant Petitioner some form of relief." (doc. 27 at 48).

In Petitioner's reply, he contends he did not enter a knowing or voluntary plea to robbery without a weapon as charged; therefore, the court's convicting and sentencing him for that crime violated due process (doc. 33 at 29–30). He contends the trial court breached the written plea agreement by convicting and sentencing him for second degree robbery without a weapon, when the plea agreement provided he was pleading to a violation of § 812.131(2)(b), third degree robbery by sudden snatching and without a deadly weapon (*id.* at 29–32). Petitioner argues the state court unreasonably determined that he entered a plea to the crime charged, and unreasonably determined that his 15-year sentence was consistent with the plea agreement (*id.* at 22–29, 39–40). In response to Respondent's "unclean hands" argument, Petitioner asserts he did not hear defense counsel's announcement that Petitioner was entering a plea to the crime charged, because counsel made the announcement while Petitioner was making his way to the defense podium, while handcuffed, shackled, and wearing a waist chain which made a lot of noise (*id.* at 27–28). He further asserts any confusion on the part of the prosecutor regarding the crime to which Petitioner was pleading cannot be attributed to Petitioner (*id.* at 32–34). Petitioner states he did not know that the trial court had adjudicated him guilty of robbery under § 812.13(2)(c) until after the sentencing hearing, at which time he filed a motion to enforce the plea agreement (*id.* at 27–28). Petitioner contends the only fair and equitable remedy for the due process violation is specific performance of the written plea agreement, pursuant to <u>Santobello v. New York</u>, 404 U.S. 257 (1971) (*id.* at 30–32). He contends he would suffer "irrevocable prejudice" if this federal court merely sets aside the conviction, because evidence crucial to his defense has been lost, including the death of a witness, Roy Lake (*id.*).

Upon review of the record, the undersigned concludes Petitioner fairly presented both of his claims (his due process claim and his double jeopardy claim) to the state courts as Grounds One and Two of his Rule 3.850 motion (Ex. DD at 5–15). He argued the trial court violated his due process rights by convicting and sentencing him to the crime charged in the information (second degree robbery

without a weapon, a violation of § 812.13(2)(c)), instead of third degree robbery by sudden snatching, a violation of § 812.131(2)(b), in accordance with the written plea agreement (*id.*). He also argued the trial court violated the prohibition against double jeopardy by accepting his nolo contendere plea to the offense of robbery by sudden snatching and subsequently convicting him of robbery as charged in the information (*id.* at 5, 9–10). Petitioner sought vacation of the judgment and entry of a judgment of conviction for robbery by sudden snatching without a deadly weapon and imposition of a the statutory maximum sentence for that offense, that is, 5 years (*id.* at 10, 12–15). The state circuit court adjudicated the claims on the merits (*id.* at 125). Petitioner argued the issues in his brief on appeal of the circuit court's decision (Ex. EE). The First DCA affirmed the lower court without written decision (Ex. GG). This record demonstrates Petitioner exhausted the claims raised in Grounds Two and Three in the state courts. It also demonstrates that the Rule 3.850 court was the last state court to have adjudicated the merits of his claims; therefore, it is that adjudication that is subject to federal review.

### 1. Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" <u>Justices of Boston Mun. Court v. Lydon</u>, 466 U.S. 294, 306, 104 S. Ct. 1805, 1812, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *See* <u>Benton v. Maryland</u>, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." <u>Justices</u>, 466 U.S. at 307–08 (citation and footnote omitted).

The clearly established federal standard applicable to claims of breached plea agreements is set forth in <u>Santobello v. New York</u>, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Santobello</u>, 404 U.S. at 262. The Supreme Court outlined two remedies available to rectify the government's breach of a plea agreement: (1) rescission of the agreement, that is, withdrawal of the guilty plea, or (2) specific performance of the agreement, "in which case petitioner should be resentenced by a

different judge." 404 U.S. at 263; *see also* <u>Puckett v. United States</u>, 556 U.S. 129, 137, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). "[A] breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." <u>Puckett</u>, 556 U.S. at 137–38 (emphasis in original).

        2.      Federal Review of State Court Decision

As previously discussed, Petitioner raised these claims as Grounds One and Two in his Rule 3.850 motion (Ex. DD at 5–15). The state circuit court adjudicated the claims as follows:

> **Ground I**—The Defendant first argues that his sentence of 15 years DOC for robbery is the product of double jeopardy and cannot stand. The written plea agreement specifically read that the Defendant was entering a plea to the charge of robbery and that the maximum sentence he could receive would be 15 years DOC.[FN 1] At the plea hearing, the Court announced that the Defendant was entering into a plea to one count of robbery without a weapon.[FN 2] The Court, after accepting the plea, imposed a sentence of 15 years DOC. Since the Defendant's sentence is consistent with the plea agreement and within the statutory maximum, there is no double jeopardy and this ground is denied.
>
> [FN 1: Exhibit A.]
>
> [FN 2: Exhibit B.]
>
> **Ground II**—The Defendant claims that the trial court erred by failing to "adhere to the oral and written plea agreement. . . ." Specifically, the Defendant claims that he actually entered a plea to the offense of robbery by sudden snatching as opposed to robbery.
>
> The fact that the Defendant cited to section 812.131(2)(b), robbery by sudden snatching, at the plea hearing is not controlling. The Defendant signed a written plea agreement for one count or [sic] robbery, not robbery by sudden snatching. The Court then asked the Defendant if he had read and understood the terms of the written agreement. The Defendant responded affirmatively. The record is clear that the Defendant was entering a plea to robbery, not robbery by sudden snatching. Since the Defendant was sentenced in accordance with his plea, this claim is denied without the need for an evidentiary hearing.

(Ex. DD at 125). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. GG).

The state court's adjudication of Petitioner's double jeopardy claim is entitled to deference. Petitioner argues jeopardy attached when the trial court accepted his plea to robbery under § 812.131(2)(b) (doc. 33 at 40–41). He contends the court again placed him in jeopardy by adjudicating him guilty of robbery without a weapon under § 812.13(2)(c) and imposing sentence on that charge (*id.*). Petitioner's adjudication of guilt and sentencing was "the natural progression of a single, continuous course of jeopardy." *See* United State v. McIntosh, — F.3d —, 2013 WL 57858, at *3 (11th Cir. 2013). The court proceeded on the original charging document, and the prosecution of that charge did not end when the court accepted Petitioner's guilty plea. Because the original prosecution did not end, the adjudication of guilt and sentencing that proceeded from that original prosecution cannot be characterized as a second prosecution. *See id.* (defendant's sentence based on his guilty plea to drug-trafficking and weapons charges in original indictment that was dismissed for technical error after his conviction but before sentencing did not violate Double Jeopardy Clause, even though government placed defendant in double jeopardy by prosecuting second indictment on same charges, since defendant's sentencing was natural progression of single continuous course of jeopardy that attached once his guilty plea to original indictment was unconditionally accepted) (citing Schiro v. Farley, 510 U.S. 222, 230, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (refusing "to treat the sentencing phase of a single prosecution as a successive prosecution for purposes of the Double Jeopardy Clause")). Petitioner's conviction and sentencing was neither a second prosecution of, nor a second punishment for, the same offense. *See id.* (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)). Therefore, the state court's adjudication of Petitioner's double jeopardy claim was not contrary to or an unreasonable application of clearly established federal law.

The same cannot be said of the state court's adjudication of Petitioner's due process claim. Petitioner claims he was convicted of a crime to which he did not plead guilty and without a jury finding of guilt. The state court record demonstrates that at the pre-trial hearing on August 2, 2007, during the Faretta inquiry, Petitioner proposed the following plea agreement in open court:

> MR. BOSWELL: . . . I was arrested and charged with robbery and aggravated assault. I'm willing today, if the state will agree to no prosecution on the aggravated assault, statute 774.021(1)(b) Florida Statutes, I'll plead nolo contendere to the robbery, statute 812.131(2)(b) Florida Statutes, waive the PSI and you can sentence

me today at your discretion if you'll let me be heard and tell my side of the story. The plea agreement's signed.

> MRS. MARTINEZ [the prosecutor]: The state has no objection. There is a PRR and an HFO filed in that and the state has no objection to that.

(Ex. B at 49) (emphasis added).[8] Petitioner stated he understood that if the court imposed a PRR enhancement, he faced a mandatory minimum sentence of 15 years in prison, but he disagreed that the enhancement applied (*id.* at 50). The court instructed defense counsel, Mr. Haug, to review the written plea agreement with Petitioner to ensure he understood it (*id.* at 51).

Following a recess, defense counsel announced:

> MR. HAUG: . . . During the recess we went over a plea agreement which he [Petitioner] had prepared. We changed a little bit. Under the terms and conditions of the plea agreement we would enter a no contest plea as charged on the robbery. The aggravated assault would be dismissed and we'd request a PSI be ordered and sentencing as soon as possible.

(Ex. B at 52). Defense counsel's announcement misstated the terms of the written plea agreement. The written plea agreement provided that Petitioner was <u>currently charged</u> with robbery, which carried a maximum sentence of 15 years (Ex. U at 25). But with regard to the charges to which Petitioner was <u>entering a plea</u>, the agreement provided:

DEFENDANT PLEADS:    ___ GUILTY    _X_ NOLO CONTENDERE to the following:

TERMS OF PLEA ENTRY AND SENTENCING AGREEMENT AGREED UPON BY THE STATE AND DEFENDANT

No Prosecution on Agg. Assault 784.0211(b) F.S.

Nolo Contendere on Robbery 812.1312(b) F.S.

Sentence to be imposed as soon as possible

. . . .

2. ADJUDICATION OF GUILT IS:    ___ WITHHELD    ___ ADJUDICATED    _X_ DISCRETION OF COURT

3. THE PRESENTENCE REPORT IS    _X_ ordered    ___ waived    ___ not required

(Ex. U at 25). Although the plea agreement stated that the maximum penalty for the <u>charged</u> crime of robbery without a weapon, a violation of § 812.13(2)(c) and a second degree felony under that statute,

---

[8] As previously noted, the information charged Petitioner with robbery in violation of Fla. Stat. § 812.13(2)(c).

was 15 years in prison, the agreement stated that the charge to which Petitioner agreed to plead was robbery under § 812.13(2)(b), which is a third degree felony carrying a maximum penalty of 5 years (*see id.*). By signing the plea agreement, Petitioner acknowledged he understood the State was seeking an enhanced sentence as a habitual felony offender ("HFO") and prison releasee reoffender ("PRR"), but the plea agreement did not indicate the length of the enhanced sentences or the applicable mandatory minimums associated with the enhancements (*id.* at 26).

After defense counsel's announcement, the court conducted a colloquy:

> THE COURT: And did you have an opportunity to read, understand fully and sign your written plea agreement?
>
> MR. BOSWELL: Yes, sir.
>
> THE COURT: Did you have the chance to speak with your attorney about it, go over it, ask questions and get legal advice to your satisfaction?
>
> MR. BOSWELL: Yes, sir.
>
> THE COURT: Has anyone mistreated you to get you to enter your plea?
>
> MR. BOSWELL: No, sir.
>
> THE COURT: And do you understand that when you enter a plea that waives your right to have a jury trial?
>
> MR. BOSWELL: Yes, sir.
>
> THE COURT: . . . And you're entering a plea today to the offense of robbery—is it without a weapon?
>
> MRS. MARTINEZ: Yes, sir.
>
> MR. HAUG: Without a weapon, yes, sir.

(Ex. B at 52–54). The court inquired of the State whether it was seeking a sentence enhancement, and the prosecutor responded that the State intended to seek a PRR sentence, which carried a mandatory sentence of 15 years, and an HFO enhancement, which potentially carried a 16-year maximum (*id.* at 54). Petitioner again acknowledged he understood that the State intended to seek that sentence (*id.* at 55). The plea colloquy concluded:

THE COURT: . . . I won't necessarily agree with the state and give you 16 years. Your attorney will try to get me to give you something less than that but I think the 15 years, is that minimum mandatory?

MRS. MARTINEZ [the prosecutor]: Yes, your Honor, on a PRR it is.

. . . .

MR. HAUG [defense counsel]: And that is, of course, if your Honor finds he does meet the criteria for it.

(Ex. B at 55–56).

At the sentencing hearing on September 11, 2007, defense counsel opposed imposition of a PRR or HFO sentence on the ground that the State failed to comply with the statutory notice provisions (Ex. B at 61–66). The prosecutor agreed that the statute required service of the notice prior to entry of the plea (*id.* at 65–66). The trial court inquired as to whether defense counsel and Petitioner understood Petitioner's maximum sentence exposure if he withdrew his plea and went to trial on the original charge, and defense counsel responded that Petitioner's maximum exposure with an HFO enhancement would be 30 years (*id.* at 66). The following exchange occurred:

THE COURT: What does he want, thirty years or fifteen years?

MR. HAUG: Well, your Honor, we'd like less than 15 years.

THE COURT: He's not going to get less than 15 that he plead to.

MR. HAUG: Yes, your Honor.

THE COURT: Now, do you want to come back later and roll the dice for 30 or do you want the 15? To take the 15 you have to waive serving—

MR. GERALD BOSWELL: I don't care what you do, your Honor. How about that? I'm going to appeal it anyway.

(Ex. B at 66–67). The court advised Petitioner he could withdraw his plea, and Petitioner initially responded, "All right." (*id.* at 67). Petitioner then announced he did not wish to withdraw his plea (*id.* at 72). He stated:

MR. GERALD BOSWELL: It is my original desire to go to sentencing just like we were supposed to do today after having a hearing to determine if I qualify as HFO and PRR, prison release [sic] reoffender, and the state had just served me this notice right here and we've objected, and if you think the District Court of Appeals will uphold that conviction and you're satisfied, then impose the sentence.

MR. GRINSTED [another prosecutor]:  The question is would you like to withdraw your plea.

MR. GERALD BOSWELL:  No, I don't want to withdraw the plea.

. . . .

THE COURT:  He's <u>charged</u> with robbery with no firearm or weapon.  What is the statutory sentence—is that a felony of the second degree?

MRS. MARTINEZ:  It's a second degree felony, yes, your Honor.

THE COURT:  So he can get 15 years without an HFO?

MRS. MARTINEZ:  That's correct, your Honor.  It's the PRR that's a mandatory 15 years.  The HFO—

THE COURT:  Well, let's just forget about the HFO and the PRR and give him the statutory sentence of 15 years.

. . . .

THE COURT:  All right.  I'm going to sentence you as just a regular felony offender under a second degree felony to 15 years disregarding HFO and PRR.  That doesn't even apply in your case at this time.  You get the maximum statutory sentence of 15 years.

. . . .

MRS. MARTINEZ:  And the court—could you please state on the record the reasons why for [sic]—

THE COURT:  Well, because there was some technical problem with whether or not he was served with the HFO notice prior to the entry of the plea, which he did back on some other date, and rather than worry about that technicality I'm just sentencing him without the HFO and the PRR being an issue.  Okay?  Did we get all that on the record?  Sir, do you want anything else on the record?

MR. GERALD BOSWELL:  No.

(Ex. B at 72–75) (emphasis added).

The state court's factual findings that the written plea agreement "specifically read that the Defendant was entering a plea to the charge of robbery and that the maximum sentence he could receive would be 15 years DOC," and that "Defendant signed a written plea agreement for one count o[f] robbery, not robbery by sudden snatching" were unreasonable.  The plea agreement expressly stated Petitioner was <u>charged</u> with robbery which carried a maximum sentence of 15 years, but it stated that he and the prosecutor agreed he would enter a plea to "Robbery 812.131(2)(b) F.S.," which

is third degree robbery by sudden snatching and without a deadly weapon (Ex. U at 25). The state court also unreasonably found that Petitioner's sentence was consistent with the plea agreement and within the statutory maximum for the crime to which he pled. The record demonstrates that Petitioner's non-enhanced 15-year sentence exceeded the 5-year statutory maximum for the crime to which he pled. These factual findings were the linchpin of state court's adjudication of Petitioner's claims.

Petitioner satisfied § 2254(d)(2) by demonstrating that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Therefore, the state court's adjudication of Petitioner's due process claim is not entitled to deference, and this court must review the claim de novo.

The construction of plea agreements is generally governed by the principles of contract law, as the Eleventh Circuit has adapted it for the purposes of criminal law. *See* <u>United States v. Rubbo</u>, 396 F.3d 1330, 1334 (11th Cir. 2005) (citing <u>United States v. Howle</u>, 166 F.3d 1166, 1168 (11th Cir. 1999) ("A plea agreement is, in essence, a contract between the Government and a criminal defendant.")); <u>Allen v. Thomas</u>, 161 F.3d 667, 671 (11th Cir. 1998) ("[W]e have said that the construction of plea agreements is governed generally by the principles of contract law, as we have adapted it for purposes of criminal law. . . ."); <u>United States v. Weaver</u>, 905 F.2d 1466, 1472 (11th Cir. 1990); <u>United States v. Jefferies</u>, 908 F.2d 1520, 1523 (11th Cir. 1990) ("Plea agreements are interpreted and applied in a manner that is sometimes likened to contractual interpretation."). "A basic tenet of contract law is that a written agreement which is unambiguous on its face should be interpreted and enforced accordingly." <u>Weaver</u>, 805 F.2d at 1472; *see also* <u>Johnson v. Beto</u>, 466 F.2d 478, 480 (5th Cir. 1972) (the contract, once created, is to be interpreted in accordance with the objective import of its unambiguous terms). Ambiguous terms in a plea agreement should be interpreted in favor of the defendant. *See* <u>Jeffries</u>, 908 F.2d at 1523. In <u>Weaver</u>, the Eleventh Circuit approved the following analysis for interpreting and enforcing plea agreements:

> . . . whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an

approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, . . . .

Weaver (quoting United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986)).

Here, Respondent urges the court to void or rescind the plea agreement based upon the contract defenses of lack of "meeting of the minds" and "unclean hands." Respondent argues the term setting forth the offense to which Petitioner agreed to plead meant one thing in the mind of Petitioner and another in the mind of the prosecutor.

Courts have generally considered contract defenses like unclean hands and lack of meeting of the minds in evaluating whether a plea agreement should be voided.[9] However, the Eleventh Circuit noted that the analogy to contract law "should not be taken too far." Jeffries, 908 F.2d at 1523. Indeed, some courts have declined to extend the contract analogy in cases involving plea agreements.

The undersigned finds the Ninth Circuit's decision in United States v. Partida-Parra, 859 F.2d 629, 634 (9th Cir. 1988) instructive. Partida-Parra was indicted for possession and conspiracy to possess heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846, and for using and carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). Partida-Parra, 859 F.2d at 630. Those charges cumulatively carried a mandatory minimum sentence of 10 years and a maximum of 45. Id. During initial plea negotiations, Partida-Parra's counsel, George Siddell, indicated that his client would only plead guilty to a misdemeanor, so as not to destroy his eligibility for immigration amnesty. Id. However, Assistant United States Attorney ("AUSA") Larry Burns maintained that he would only accept a plea to a felony. Id. Later, Siddell discussed a plea agreement with AUSA Phillip Halpern,

---

[9] The Third, Fourth, Seventh, and Tenth Circuits have applied contract law doctrines to determine whether to void or modify plea agreements. See, e.g., McKeever v. Warden SCI-Graterford, 486 F.3d 81, 86 (3d Cir. 2007) (determining whether defendant was entitled to rescind plea agreement based upon mutual mistake); United States v. Wood, 378 F.3d 342, 349 & n.3, 350 (4th Cir. 2004) (ordering "specific performance" of constructively amended plea agreement); United States v. Bradley, 381 F.3d 641, 648 (7th Cir. 2004) (invalidating plea where both parties were mistaken as to nature of charge against defendant) (emphasis added); United States v. Williams, 198 F.3d 988, 993–94 (7th Cir. 1999); United States v. Lewis, 138 F.3d 840, 841–43 (10th Cir. 1998) (permitting rescission of plea on the basis of "mutual mistake"); United States v. Barnes, 83 F.3d 934, 938 (7th Cir. 1996) (acknowledging there must be a "meeting of the minds" regarding plea agreement's essential terms and "[a]t least in theory, ambiguity in an essential term or a mutual mistake about the meaning of such a term can invalidate it."); Houmis v. United States, 558 F.2d 182, 183 (3d Cir. 1977) (acknowledging plea agreements have been invalidated when there is doubt whether any "meeting of the minds" ever resulted from plea negotiations).

who was standing in for Burns. *Id.* Apparently, a plea agreement was reached. *Id.* The same day, AUSA Halpern prepared, and AUSA Burns signed, an information superseding the original indictment and charging Partida-Parra with misdemeanor possession of heroin in violation of 21 U.S.C. § 844. Partida-Parra, 859 F.2d at 630–31. One week later, AUSA Halpern appeared at the trial-setting hearing and filed the superseding information, and Partida-Parra entered a plea of guilty to the misdemeanor. *Id.* at 631. The district court accepted the plea. Six weeks later, AUSA Burns telephoned Siddell and informed him that the superseding information contained a "clerical" error: the correct charge was not supposed to be 21 U.S.C. § 844, a misdemeanor, but rather 21 U.S.C. § 841, the felony possession section. Partida-Parra, 859 F.2d at 631. The next day, AUSA Burns wrote to the court that the defendant had been erroneously permitted to plead to a misdemeanor and indicated that the government would move to set aside the misdemeanor guilty plea. *Id.* The district court held a brief hearing one month later, and granted the government's motion to set aside the misdemeanor guilty plea. *Id.* The district court reinstated Partida-Parra's plea of not guilty to the charges in the original indictment and set the case for jury trial. *Id.* The trial was held the next month, and Partida-Parra was convicted on all counts. *Id.* He was sentenced to a total of ten years imprisonment. *Id.*

The government argued that the superseding indictment, although unambiguous on its face, reflected a "mistake of fact," such that there was no "meeting of the minds" between the parties. According to the government, a unilateral mistake of one party was a ground for relief from a contract where the other party "knew or had reason to know of the mistake." The Ninth Circuit first rejected the theory that Rule 11 of the Federal Rules of Criminal Procedure provided authority for the district court's authority to vacate a guilty plea on the government's motion, even though the court had accepted the plea and the defendant had not breached his part of the agreement. *Id.* at 631–33.

The court then determined whether the district court had authority to vacate the plea based upon common law contract principles. The court determined that the district court did not have such authority:

> We do not believe that the plea-agreement/contract analogy extends so far as to allow the district court to revisit an accepted plea to reconsider whether the "contract" was formed (as distinct from considering whether it was breached). The contract analogy is imperfect. The formation of binding plea agreements is governed not by the Uniform

Commercial Code, but by the Federal Rules of Criminal Procedure, which requires, among other things, that the court approve the plea agreement and find it to have a factual basis. Here, the defendant's plea of guilty was entered and accepted by the court in the presence of an Assistant U.S. Attorney (who had negotiated the plea and drafted the information). The information was valid on its face. Notwithstanding the government's subsequent position, there is nothing inherently unreasonable about a misdemeanor plea offer in this case. *Compare* [United States v.] Cruz, 709 F.2d [111] at 111–12 [(1st Cir. 1983)]. If the substitute information was obviously mistaken, the AUSA could and should have objected at the time the plea was entered. According to the government, the oversight occurred due to a communication breakdown between the two prosecutors involved in the case. The government is entitled to no relief from its mistake in such circumstances. *See* Santobello, 404 U.S. at 262, 92 S. Ct. at 499 ("inadvertence" no excuse for prosecutor's breach of plea agreement, because "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done").

Partida-Parra, 859 F.3d at 634.

Assuming, without deciding, that this federal habeas court is authorized to vacate a plea agreement upon the State's request, even though the state court had accepted the agreement, and the defendant had not breached his part of the agreement, the undersigned declines to accept the State's invitation to do so here. The undersigned acknowledges that there is testimony in the record evidencing confusion as to the offense to which Petitioner was pleading. Defense counsel announced to the court at the plea hearing that Petitioner was pleading to robbery "as charged." Additionally, the prosecutor referenced the enhanced penalties associated with second degree felonies during both the plea and sentencing hearings. Further, the trial court posed questions to the prosecutor and defense counsel regarding the offense with which Petitioner was charged, and counsel answered those questions, which suggests the court was under the impression that Petitioner was pleading to the crime charged.

However, the written plea agreement was unambiguous and expressly stated that the charge to which Petitioner was pleading was robbery under 812.131(2)(b). The prosecutor signed the agreement, thereby accepting the terms of the agreement, including the term providing that Petitioner would enter a plea to a robbery under § 812.131(2)(b).[10] Further, when Petitioner initially announced

---

[10] Respondent's argument that no plea agreement existed, because the prosecutor did not sign the written plea agreement and instead signed only the "DNA certification" is unconvincing. It is apparent from the face of the agreement that the prosecutor simply signed it in the wrong place. Petitioner signed the agreement in the

his plea offer in open court, he stated he was offering to plead nolo contendere to robbery under § 812.131(2)(b), which is a completely separate offense than the robbery charged in the information, a violation of § 812.13(2)(c) (Ex. B at 49). The prosecutor stated she had no objection to those terms, but would preserve the State's ability to seek an enhanced PRR or HFO sentence (*id.*). The written plea agreement expressly included the terms announced by both Petitioner and the prosecutor (Ex. U at 25–33). The written agreement even included an addendum in which the offenses of robbery and robbery by sudden snatching, and their respective separate statutes, were listed (*id.* at 31). The objective evidence, including those portions of the plea negotiations that are part of the record and, most importantly, the express terms of the written plea agreement, shows that there was a "meeting of the minds" with regard to the offense to which Petitioner was pleading. It cannot be said that when the prosecutor signed the plea agreement, she did not know she was agreeing to reduce the offense to § 812.131(2)(b). In the face of this unambiguous, objective evidence, the undersigned rejects Respondent's argument that there was no meeting of the minds, based purely on the ambiguous discussion between defense counsel, the prosecutor, and the court during the plea hearing.

Respondent's "unclean hands" argument is also unconvincing. Petitioner did not induce the prosecutor's alleged mistake as to the offense to which Petitioner was pleading guilty. Indeed, Petitioner specifically sated he wished to plead to robbery under § 812.131(2)(b) (if the state agreed to nolle prosse the aggravated assault charge). Further, Petitioner did not waive his challenge to the court's adjudicating him guilty of and sentencing him to a second degree felony, in violation of the terms of the agreement. *See, e.g.*, <u>United States v. Hodge</u>, 306 F. App'x 910 (2009). Respondent asserts Petitioner should have interjected when defense counsel announced he was pleading to robbery "as charged." However, Petitioner states in his sworn habeas petition that he did not hear defense counsel's announcement (doc. 15 at 7–8). Further, Petitioner's acknowledgment that he understood the State intended to seek sentence enhancements which carried maximum penalties of 15 or 16 years

---

"Acknowledgment of Defendant" section; defense counsel signed it in the "Certificate of Defendant's Attorney" section; and the prosecutor signed it in the "Certificate of State Attorney" section (Ex. U at 28–29). Strangely, the proper section for the prosecutor to sign was in the "Acknowledgment of Defendant" section (*id.* at 28). The "Certificate of State Attorney" section pertained to DNA certification (*id.* at 29). However, the fact that the prosecutor's signature appears on the plea agreement is sufficient to convince this court that the prosecutor was a party to the plea agreement.

is insufficient to demonstrate he knew that the prosecutor misunderstood the terms of the plea agreement. Moreover, Petitioner had no reason to interject when the trial court questioned counsel regarding the crime with which Petitioner was charged, because counsel correctly answered that Petitioner was charged with robbery without a weapon, a second degree felony.

Upon consideration of the parties' arguments and the state court record, the undersigned concludes a valid plea agreement existed, and an essential, material term of that agreement was that Petitioner would plead nolo contendere to robbery under § 812.131(2)(b).

The court must next determine whether the State breached the terms of the agreement. The transcripts of the proceedings demonstrate that the prosecutor sought sentencing for a second degree felony. This constituted a breach of the term of the plea agreement providing Petitioner would plead to a third degree felony. Further, the trial court ignored the specific term of the plea agreement setting forth the offense to which Petitioner pleaded guilty and, without any authority to do so, departed from the plain meaning of the agreement negotiated between the parties and memorialized in the plea agreement.[11]

Finally, Petitioner has demonstrated his substantial rights were affected by the State's breach.[12] He was sentenced to 15 years in prison; whereas if the State had fulfilled its promise of proceeding on the charge of robbery by sudden snatching without a deadly weapon, a third degree felony, the maximum sentence Petitioner would have received is 5 years either unenhanced or with a PRR enhancement, or 10 years with an HFO enhancement.

The remaining issue is the remedy for the State's breach of the plea agreement. The choice of remedies is within the sentencing court's discretion. *See* Santobello, *supra*; United States v. Al-Arian, 514 F.3d 1184, 1190 (11th Cir. 2008) (citing Santobello). However, specific performance of

---

[11] The fact that Petitioner successfully challenged imposition of the sentence enhancements did not relieve the State of its obligations under the plea agreement; nor did Petitioner's challenging the enhancements invalidate the plea agreement.

[12] In Puckett v. United States, 556 U.S. 129, & 140–43 & n.3, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009), the Supreme Court noted that Santobello's automatic-reversal rule may not have survived its elaboration of harmless error principles in cases such as Arizona v. Fulminante, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (a plea breach does not "defy analysis by 'harmless-error' standards" by affecting the entire adjudicatory framework) and Neder v. United States, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L .Ed. 2d 35 (1999) (a plea breach does not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence"), where, as here, the defendant did not preserve the plea breach issue by objecting to the breach at sentencing.

the agreement, as opposed to withdrawal of the guilty plea, is the favored remedy in the Eleventh Circuit. *See* United States v. Johnson, 132 F.3d 628, 631 (11th Cir. 1998) (citing Santobello); United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) (citing Santobello). Furthermore, "[s]pecific performance is particularly appropriate where [ ] no question exists that the plea was knowingly and voluntarily entered." Johnson, 132 F.3d at 631 (citing United States v. Tobon-Hernandez, 845 F.2d 277, 280–81 (11th Cir. 1988)). Florida courts also follow the rule that the sentencing court must assess the remedy due for the breach, either specific performance or withdrawal of the plea. *See* Hunt v. State, 613 So. 2d 893, 899 (Fla. 1992); Tillman v. State, 522 So. 2d 14 (Fla. 1988). Some Florida appellate courts follow the rule that a defendant's choice of remedies should be followed, especially where the other remedy would not remedy the defendant's loss (*see* McCullough v. State, 974 So. 2d 1214, 1218 (Fla. 2d DCA 2008); Mehl v. State, 958 So. 2d 465, 468 (Fla. 4th DCA 2007); Buffa v. State, 641 So. 2d 474, 475 (Fla. 3d DCA 1994); Spencer v. State, 623 So. 2d 1211, 1213 (Fla. 4th DCA 1993)). The Florida Supreme Court, however, has followed the rule that withdrawal of the plea is not the proper remedy where the plea is otherwise shown to be voluntary (*see* Hunt, Tillman, *supra*; *see also* Mehl, *supra*.). Because the United States Supreme Court declared that the choice of remedies is within the sentencing court's discretion, even though one remedy may be favored over another, this federal court should leave the choice of remedy to the state court.

C.     Ground Four: "The state trial court violated Petitioner's protection against cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution."

Petitioner withdrew Ground Four in his reply (doc. 33 at 41).

D.     Ground Five: "The state trial court violated Petitioner's right to due process of law as guaranteed by Fifth, Sixth, and Fourteenth Amendments of the United States Constitution."

Ground Six.: The state trial court violated Petitioner's right to due process of law as guaranteed by Fifth, Sixth, and Fourteenth Amendments of the United States Constitution."

Petitioner alleges the trial court violated his due process rights by imposing a vindictive, pre-determined sentence of 15 years as reprisal for Petitioner's insisting on representing himself and rejecting the court's previous 10-year plea offer (doc. 15 at 17–18). He alleges the court also threatened him with a 30-year sentence if he went to trial (*id.* at 18). Petitioner also contends the court imposed sentence without allowing him to present mitigating evidence (*id.* at 17). Petitioner asserts

he raised these claims on direct appeal and in Ground Three of his Rule 3.850 motion (*id.* at 17–18; doc. 33 at 42, 44).

Respondent concedes Petitioner raised on direct appeal a claim that the trial court committed error when it sentenced him without considering mitigating evidence (doc. 27 at 69). Respondent contends as to any issues raised in Petitioner's postconviction motions, the claims were not properly raised, because they could have and should have been raised on direct appeal; therefore, "the state court did not review the merits of Petitioner's claim." (*id.*). Respondent thus contends Petitioner's claims were not properly exhausted and are procedurally barred (*id.* at 69–71). Respondent continues, "assuming this Court proceeded further on any unexhausted claims, and with respect to those claims that may be exhausted," the state court's adjudication is entitled to deference (*id.* at 71–76).

The record demonstrates that Petitioner presented all aspects of Grounds Five and Six in his Rule 3.850 motion (*see* Ex. DD at 16–20). Contrary to Respondent's assertion that the state court did not review the merits of Petitioner's claims, the circuit court adjudicated Petitioner's claims on the merits (*id.* at 125–26). Petitioner argued the issues on appeal, and the First DCA affirmed (Exs. EE, GG). Petitioner thus fully exhausted, and the state courts adjudicated the merits of, Grounds Five and Six.

### 1. Clearly Established Federal Law

Vindictive sentencing occurs when a harsher sentence is imposed upon a defendant for exercising a constitutional right. *See* North Carolina v. Pearce, 395 U.S. 711, 725, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *see also* Alabama v. Smith, 490 U.S. 794, 798–799, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

In Bordenkircher v. Hayes, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) the defendant was offered a plea deal in which he would not be habitualized, with the clear understanding that if he went to trial and was convicted, habitualization, and a resulting life sentence, would follow. The Court held that while "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights,'" it is a legitimate and permissible attribute of the plea bargaining process. 434 U.S. at 364 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973)). The Court reasoned that the plea

bargaining process benefits both sides—if the defendant pleads the state is guaranteed a conviction, albeit with a possible lesser offense and lesser penalty, and the defendant is guaranteed no greater penalty than that offered. Conversely, if a defendant rejects the plea, he has a chance at acquittal, but with the possibility of a greater sentence if he is not acquitted. Such a process imposes difficult choices, but it is not unconstitutional. Similarly, in <u>Corbitt v. New Jersey</u>, 439 U.S. 212, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978), the Court addressed New Jersey's sentencing scheme for murder cases, which provided that if an accused was found guilty of first degree murder by a jury, the mandatory sentence was life. However, if the accused pleaded no contest, he <u>could</u> be sentenced as if guilty of second degree murder, or to a maximum of thirty years, but with the court still having the authority to impose a life sentence if the crime merited that degree of punishment. Corbitt argued the statute punished him for exercising his right to a jury trial. The Court disagreed, holding that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." 430 U.S. at 218. Indeed, the Court noted that a state may encourage a guilty plea by offering substantial benefits in return for a plea, just as in <u>Bordenkercher</u>, *supra*.

2.     Federal Review of State Court Decision

The state circuit court adjudicated Petitioner's claims as follows:

> **Ground III**—The Defendant next claims that he was denied a fair sentencing hearing and that the trial judge was biased and vindictive. The Court has reviewed the sentencing transcript[FN 3] in full and finds no evidence of bias or vindictiveness against the Defendant. This claim, as it is contradicted by the record, is summarily denied.
>
> [FN 3:  Exhibit C.]

(Ex. DD at 125–26).[13] Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. GG).

Petitioner's reference to the trial court's "10-year plea offer" is based upon the trial court's comments during a pre-trial hearing on June 4, 2007 (Ex. B at 15–23). As previously discussed, defense counsel, Mr. Haug, announced to the court that Petitioner told him he did not want him to be his attorney any longer (*id.* at 15). The court refused to discharge Mr. Haug and inquired whether

---

[13] The judge who presided during the postconviction proceedings was not the judge who sentenced Petitioner.

Petitioner wished to represent himself (*id.*). After the court determined that Petitioner wished to represent himself but with Mr. Haug's assistance as stand-by counsel, the prosecutor announced the State's intention to seek an enhanced PRR sentence (*id.* at 19). The following discussion occurred:

> MR. HAUG: . . . I have discussed that [i.e., the PRR enhancement] with Mr. Boswell previously. Essentially the effect of it, since he's charged with a second degree felony, would make any guilty verdict of that second degree felony—the sentence would be the maximum would be 15 years day for day.
>
> THE COURT: Have you been successful in any negotiated plea offers below 15 years?
>
> MR. HAUG: Yes, your Honor. The most recent plea offer we had from the state was set it for sentencing with a cap at ten years or just ten years.
>
> THE COURT: All right. Do you understand you could enter a plea today with the most you could ever get is ten years. I'm going to order a presentence investigation and I might give you less than ten years depending on your family history, your educational history, your military history, your criminal history and just generally what kind of person you've been all your life. Do you understand that?
>
> MR. BOSWELL: Yes, sir.
>
> THE COURT: I could give you 11 months, 29 days in the county jail, three years, five years, ten years—up to ten years would be the maximum. If you go to trial the maximum is 15 years. Do you understand all that?
>
> MR. BOSWELL: Yes, sir.
>
> THE COURT: And you want to roll the bones and go to trial for 15, right?
>
> MR. BOSWELL: Your Honor, it was my understanding that the state attorney was—as a matter of fact Thursday, I think, she announced there was a minimum sentencing requirement.
>
> THE COURT: What's that?
>
> MRS. MARTINEZ: Well, it was an error, your Honor. It's not a minimum mandatory ten years. It would have been if it was an HVFO and the state had filed it that way, but we had filed that HVFO incorrectly. So the offer is ten years—a PSI with a ten year cap.

> THE COURT: What that means is that's the most you can get is ten, but you might get less. I don't know anything about your criminal history. If it's not too bad, I'll give you less than ten years.

> MRS. MARTINEZ: My understanding in talking with Mr. Haug, there are some mitigating circumstances that the court should see when it comes to imposing sentence.

> THE COURT: I'm pretty reasonable really. I mean, if you want to take your chances with me, it's probably going to be less than ten years.

> MR. BOSWELL: Your Honor, there's certainly some mitigating circumstances in the case and that's why I thought we had this matter resolved but the mitigating circumstances, I think, require a minimum amount of corroborating evidence—okay—which we don't have. We haven't got it. It's there, but it hadn't been—there's been no attempt to get it.

(Ex. B at 20–22). The court set the matter for a status hearing and reiterated that Petitioner would represent himself with Mr. Haug as standby counsel (*id.* at 23).

Petitioner's reference to the trial court's "threatening him with a 30-year sentence" if he went to trial is based upon an exchange that occurred at sentencing on September 11, 2007. As previously discussed, defense counsel objected to any sentence enhancement on the ground that the State had not followed statutory notice requirements (Ex. B at 61–65). The prosecutor agreed that the statute required service of the notice prior to entry of the plea (*id.* at 65–66). The trial court inquired as to whether defense counsel and Petitioner understood Petitioner's maximum sentence exposure if he withdrew his plea and went to trial on the original charge, and defense counsel responded that Petitioner's maximum exposure with an HFO enhancement would be 30 years (*id.* at 66). The following exchange occurred:

> THE COURT: What does he want, thirty years or fifteen years?

> MR. HAUG: Well, your Honor, we'd like less than 15 years.

> THE COURT: He's not going to get less than 15 that he plead to.

> MR. HAUG: Yes, your Honor.

> THE COURT: Now, do you want to come back later and roll the dice for 30 or do you want the 15? To take the 15 you have to waive serving—

> MR. GERALD BOSWELL: I don't care what you do, your Honor. How about that? I'm going to appeal it anyway.

(Ex. B at 66–67). The court advised Petitioner he could withdraw his plea, and Petitioner initially responded, "All right." (*id.* at 67). Petitioner then announced he did not wish to withdraw his plea (*id.* at 72). He stated:

> MR. GERALD BOSWELL: It is my original desire to go to sentencing just like we were supposed to do today after having a hearing to determine if I qualify as HFO and PRR, prison release [sic] reoffender, and the state had just served me this notice right here and we've objected, and if you think the District Court of Appeals will uphold that conviction and you're satisfied, then impose the sentence.

> MR. GRINSTED [the prosecutor]: The question is would you like to withdraw your plea.

> MR. GERALD BOSWELL: No, I don't want to withdraw the plea.

. . . .

> THE COURT: He's charged with robbery with no firearm or weapon. What is the statutory sentence—is that a felony of the second degree?

> MRS. MARTINEZ: It's a second degree felony, yes, your Honor.

> THE COURT: So he can get 15 years without an HFO?

> MRS. MARTINEZ: That's correct, your Honor. It's the PRR that's a mandatory 15 years. The HFO—

> THE COURT: Well, let's just forget about the HFO and the PRR and give him the statutory sentence of 15 years.

. . . .

> THE COURT: All right. I'm going to sentence you as just a regular felony offender under a second degree felony to 15 years disregarding HFO and PRR. That doesn't even apply in your case at this time. You get the maximum statutory sentence of 15 years.

(Ex. B at 72–75).

Petitioner failed to show that the trial court imposed the 15-year sentence as punishment for Petitioner's seeking to discharge defense counsel on previous occasions and rejecting the 10-year plea offer. Initially, it was the State, not the court, who proposed the 10-year deal. Florida law does not forbid a judge from becoming involved in a discussion wherein the accused is asked whether he is

aware of the State's pending plea offer and the defendant's maximum exposure if convicted at trial. *See* Snow v. Crosby, 851 So.2d 222, 225 (Fla. 3d DCA 2003) (citations omitted). Further, assuming arguendo that the judge's exchange with Petitioner regarding the knowing and voluntary nature of his rejection of the plea offer constituted participation in the plea negotiations, the record demonstrates that the totality of the circumstances did not give rise to a presumption of vindictiveness. The trial judge did not initiate the plea discussion, never implied that a harsher sentence would result if Petitioner exercised his right to a trial by jury, did not tell him to accept or reject the plea offer, did not force him to take time to consider his options, and only attempted to ensure that Petitioner's rejection of the 10-year offer was voluntary, knowing, and intelligent.

Moreover, the court did not "threaten" Petitioner with a 30-year sentence if he went to trial. The record shows that the court believed, albeit mistakenly, that Petitioner bargained for a minimum sentence of 15 years in the plea agreement. The court's asking Petitioner whether he wished to be sentenced in accordance with that agreement or go to trial and risk a 30-year sentence, does not demonstrate vindictiveness.

Additionally, Petitioner was not denied the right to present mitigating evidence at sentencing. The record demonstrates the court considered the information contained in the presentence investigation report and letters submitted on Petitioner's behalf (Ex. B at 59–60). Therefore, Petitioner failed to demonstrate a due process violation with respect to his opportunity to present mitigating information at sentencing.

Petitioner failed to demonstrate that the state court's adjudication of the issues raised in Grounds Five and Six was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief on those claims.

E.    Ground Seven: "The state trial and appellate courts violated Petitioner's right to equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution."

Petitioner contends the state courts at the trial and appellate levels failed to apply state and federal law to the facts of his case, thus denying him the relief given to other similarly situated individuals (doc. 15 at 18–19). He asserts he raised this claim in his belated direct appeal (*id*. at 19).

Respondent did not address Ground Seven in its Answer (*see* doc. 27).

The record refutes Petitioner's assertion that he raised an equal protection claim in his belated direct appeal. His brief on appeal did not include an equal protection argument (*see* Exs. Y, Z). Further, he did not raise an equal protection claim in his Rule 3.850 motion (*see* Ex. DD). Therefore, he did not satisfy the exhaustion requirement as to this claim.[14] Further, a second appeal is unavailable, and any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Therefore, Ground Seven is procedurally defaulted.

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Petitioner has not alleged cause for his default; nor has he shown he is entitled to review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar, because he has not alleged the existence of new reliable evidence in light of which it is more likely than not no reasonable juror would have convicted him. Therefore, Ground Seven is procedurally barred from federal review.

Notwithstanding Petitioner's failure to exhaust, the claim is without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause, the claimant generally must allege "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, the claimant must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The claimant must also allege that the alleged violator acted with the

---

[14] The State may not be deemed to have waived the exhaustion requirement, because counsel did not expressly waive it. *See* 28 U.S.C. § 2254(b)(3).

intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the claimant "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007), quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. *Id.* at 1204–05.

Other than in conclusory fashion, Petitioner does not allege facts showing he was similarly situated with other defendants who received more favorable treatment than he. Moreover, with respect to a traditional equal protection claim, Petitioner failed to allege that any allegedly discriminatory treatment was based on a constitutionally protected interest, such as race. Furthermore, as to both types of equal protection claims, Petitioner did not allege the Florida courts acted with the intent to discriminate against him. He therefore failed to demonstrate an equal protection violation under the Fourteenth Amendment.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542

(2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the amended petition for writ of habeas corpus (doc. 15) be **CONDITIONALLY GRANTED** as to Grounds Two and Three, and Petitioner be released from custody **UNLESS** within **SIXTY (60) DAYS** from the date of judgment in this case, the state court holds a hearing to determine the appropriate remedy for the breach of the plea agreement.

2.	That the amended petition for writ of habeas corpus (doc. 15) be **DENIED** as to Grounds One, Four, Five, Six, and Seven.

3.	That a certificate of appealability be **DENIED**.


At Pensacola, Florida, this 25th day of February 2013.



/s/ *Elizabeth M. Timothy*
_____
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**