IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GERALD THOMAS BOSWELL,
      Petitioner,

vs.                               Case No.:  3:11cv352/RV/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter was remanded to the undersigned by the District Judge for further consideration of Grounds Two and Three of Petitioner's amended habeas petition (doc. 15), in light of the District Judge's expanding the record to include an affidavit of the prosecutor in Petitioner's underlying criminal case (*see* docs. 53, 54).  Upon review of the expanded record, the undersigned concluded that an evidentiary hearing was warranted, and the court appointed counsel to represent Petitioner, in accordance with Rule 8(c) of the Rules Governing § 2254 Cases (docs. 55, 57).  The court held an evidentiary hearing on August 14, 2013 (*see* docs. 81, 86).

After careful consideration of the parties' arguments, the record, and the evidence adduced at the evidentiary hearing, it is the opinion of the undersigned that Petitioner is entitled to habeas relief on his claim that his conviction and sentence in Okaloosa County Circuit Court Case No. 2007-CF-205 violated his federal due process rights, because it violated the unambiguous terms of the Plea and Sentencing Agreement negotiated by the parties.  However, Petitioner is not entitled to relief on his double jeopardy claim.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are set forth in the previous Report and Recommendation (doc. 43) and are incorporated herein.

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).     The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[1] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the

court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    PETITIONER'S GROUNDS TWO AND THREE[2]

>    Ground Two:  "The state trial court violated Petitioner's right to due process of law as guaranteed by Fifth and Fourteenth Amendments of the United States Constitution."

>    Ground Three: "The state trial court violated Petitioner's protection against double jeopardy as guaranteed by Fifth and Fourteenth Amendments of the United States Constitution."

Petitioner contends his conviction and fifteen-year sentence violate his federal due process rights, because the written Plea and Sentencing Agreement he entered with the State provided he would plead nolo contendere to a violation of Florida Statutes § 812.131(2)(b) (robbery by sudden snatching without a weapon, a third degree felony carrying a maximum sentence of five (5) years in prison), but he was actually convicted of a violation of Florida Statutes § 812.13(2)(c) (robbery without a weapon, a second degree felony carrying a maximum sentence of fifteen (15) years in prison) (doc. 15 at 4–14, 16).  Petitioner contends the appropriate remedy for the due process violation is specific performance of the Plea and Sentencing Agreement; because withdrawal of the plea would not remedy his loss (doc. 47 at 5–9).  Petitioner additionally contends the state court violated double jeopardy principles by convicting and sentencing him for a violation of § 812.13(2)(c) after the court had accepted his nolo contendere plea to a violation of § 812.131(2)(b) (*id.*).  Petitioner states he raised these claims on direct appeal of his conviction and in his Rule 3.850 motion (*id.*).

Respondent contends that to the extent Petitioner claims that his plea was not knowing, intelligent, and voluntary, Petitioner failed to fairly present his claim to the state courts (doc. 27 at 44–47, 61).  Respondent states Petitioner argued in a motion to enforce the Plea and Sentencing Agreement that the terms of the agreement provided he would plead nolo contendere to the offense of robbery by sudden snatching, and the court accepted the plea, which "placed [him] in jeopardy" by accepting the plea, but then violated the plea agreement by sentencing him to robbery as charged (*id.* at 45).  Respondent further asserts Petitioner appealed the circuit court's denial of the motion to enforce the plea agreement (*id.*).  Respondent argues Petitioner never presented a claim that his

---

[2] The court sets forth the parties' arguments included in their pleadings (Petitioner's amended petition (doc. 15), Respondent's answer (doc. 27), and Petitioner's reply (doc. 33)), as well as their objections to the first Report and Recommendation issued by the undersigned (doc. 47 (Petitioner's); doc. 49 (Respondent's)).

plea was unknowing and involuntary; therefore, to the extent he presents that claim here, it is unexhausted and procedurally barred (*id.* at 46–47, 61). Respondent argues that any other constitutional challenges to the conviction and sentence, namely, those that do not relate to the knowing and voluntary nature of the plea, were waived by Petitioner's entering a plea (*id.* at 47–48).

Respondent additionally contends Petitioner's due process claim is without merit (doc. 27 at 48–59). Respondent asserts that the state court record demonstrates the prosecutor never agreed to the written terms of the Plea and Sentencing Agreement, rather she signed only the "DNA acknowledgment" page of the agreement (doc. 27 at 48–59; doc. 49 at 1–3). Respondent further contends the trial court had no authority to accept a plea to a lesser included offense without the prosecutor's express agreement to dismiss the greater charge in favor of the lesser included offense, which the prosecutor did not so agree, as evidenced by the fact that she did not write "lesser included offense" or "LIO" on the Plea and Sentencing Agreement (doc. 27 at 48–59; doc. 49 at 3–4).

Respondent also argues that the language of the Plea and Sentencing Agreement was ambiguous as to the crime to which Petitioner was pleading nolo contendere (doc. 27 at 48–59; doc. 49 at 4–6). Respondent argues the offense of robbery and robbery by sudden snatching are entirely different offenses, appearing in different sections of the Florida Statutes, § 812.13 and § 812.131, respectively, and are titled "Robbery" and Robbery by sudden snatching," respectively (doc. 49 at 5). Respondent argues because the terms of the Plea and Sentencing Agreement were ambiguous, the court must examine the circumstances of the entry of the plea to determine the parties' understanding in order to determine its terms (doc. 27 at 48–59; doc. 49 at –10). Respondent asserts that the state court records shows that the parties (including Petitioner) repeatedly referred to the offense to which Petitioner was pleading nolo contendere as "Robbery," and never referenced "Robbery by sudden snatching" (*id.*). Additionally, both the Plea and Sentencing Agreement and the discussions surrounding the Plea and Sentencing Agreement indicate that the prosecutor, defense counsel, Petitioner, and the trial court understood that the State intended to seek Prison Releasee Reoffender ("PRR") and Habitual Felony Offender ("HFO") sentence enhancements. Respondent argues defense counsel and the prosecutor knew that a PRR enhancement could not be legally

imposed if Petitioner was pleading to Robbery by sudden snatching, which demonstrates they both believed that Petitioner was pleading to Robbery as charged (*id.*).

Respondent further argues that Petitioner himself knew he was pleading to robbery, a second degree felony, and he is attempting to defraud the courts into giving him a windfall (doc. 27 at 48–59; doc. 49 at 10–20). Respondent asserts several points in support of this argument: (1) Petitioner drafted the Plea and Sentencing Agreement himself; (2) Petitioner repeatedly referred to the crime to which he agreed to plead to as "robbery," thus creating the impression he was pleading as charged, yet he deliberately included the statutory section for robbery by sudden snatching, § 812.131(2)(b), in the Plea and Sentencing Agreement; (3) Petitioner insisted he wished to be sentenced immediately, which suggests he was attempting to reduce the likelihood someone would notice his inclusion of Section 812.131(2)(b) in the Plea and Sentencing Agreement; (4) on the day Petitioner's time for filing a motion to withdraw his plea expired, he filed a motion to enforce the plea agreement instead; (5) at sentencing, Petitioner stated his clear and unambiguous intent to appeal, yet he clearly and unambiguously stated he did not wish to withdraw his plea; and (6) Petitioner is a well-versed participant in Florida's criminal justice system (doc. 49 at 10–20). Respondent contends even if Petitioner genuinely believed he was pleading guilty to the lesser offense of robbery by sudden snatching, his belief was unreasonable (doc. 49 at 20–27). Therefore, the most he can establish is mutual mistake, the remedy for which is withdrawal of the plea, not specific performance of the Plea and Sentencing Agreement (*id.*).

With regard to Petitioner's double jeopardy claim, Respondent argues the claim is premature "unless or until the State proceeded to sentencing again against Petitioner for the greater crime should this Court grant Petitioner some form of relief." (doc. 27 at 48).

In Petitioner's reply, he contends he did not enter a knowing or voluntary plea to robbery without a weapon as charged; therefore, the court's convicting and sentencing him for that crime violated due process (doc. 33 at 29–30). He repeats his contention that the trial court breached the Plea and Sentencing Agreement by convicting and sentencing him for second degree robbery without a weapon, when the agreement provided he was pleading to a violation of § 812.131(2)(b), third degree robbery by sudden snatching and without a deadly weapon (*id.* at 29–32). Petitioner argues the state court unreasonably determined he entered a plea to the crime charged, and

unreasonably determined that his fifteen-year sentence was consistent with the plea agreement (*id.* at 22–29, 39–40). Petitioner denies Respondent's allegation that he knowingly misled the prosecutor, the trial court, and defense counsel to believe he was pleading to the crime charged, and he argues that any confusion on their part cannot be attributed to him (*id.* at 32–34). He states he did not know that the trial court had adjudicated him guilty of robbery under § 812.13(2)(c) until after the sentencing hearing, at which time he filed a motion to enforce the Plea and Sentencing Agreement (*id.* at 27–28). Petitioner contends the only fair and equitable remedy for the due process violation is specific performance of the Plea and Sentencing Agreement, pursuant to <u>Santobello v. New York</u>, 404 U.S. 257 (1971) (*id.* at 30–32). He further contends he would suffer "irrevocable prejudice" if this federal court merely rescinded the Plea and Sentencing Agreement, effectively withdrawing his plea, because evidence crucial to his defense has been lost, including fingerprint evidence and the testimony of a witness who is now deceased (Mr. Roy Lake) (*id.*).

Upon review of the record, the undersigned concludes Petitioner fairly presented both of his claims (his due process claim and his double jeopardy claim) to the state courts as Grounds One and Two in his Rule 3.850 motion (Ex. DD at 5–15).[3] He argued the trial court violated his due process rights by convicting and sentencing him to the crime charged in the information (second degree robbery without a weapon, a violation of § 812.13(2)(c)), instead of third degree robbery by sudden snatching, a violation of § 812.131(2)(b), in accordance with the Plea and Sentencing Agreement (*id.*). He also argued the trial court violated the prohibition against double jeopardy by accepting his nolo contendere plea to the offense of robbery by sudden snatching and subsequently convicting him of robbery as charged in the information (*id.* at 5, 9–10). Petitioner sought vacation of the judgment and entry of a judgment of conviction for robbery by sudden snatching without a deadly weapon, and imposition of the statutory maximum sentence for that offense, which is five (5) years (*id.* at 10, 12–15). The state circuit court adjudicated the claims on the merits (*id.* at 125). Petitioner argued the issues in his brief on appeal of the circuit court's decision (Ex. EE). The First DCA affirmed the lower court without written opinion (Ex. GG). This record demonstrates Petitioner

---

[3] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 27). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

exhausted the claims raised in Grounds Two and Three. It also demonstrates that the post-conviction court was the last state court to adjudicate the merits of his claims; therefore, it is that adjudication that is subject to federal review.

        1.      Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" <u>Justices of Boston Mun. Court v. Lydon</u>, 466 U.S. 294, 306, 104 S. Ct. 1805, 1812, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *See* <u>Benton v. Maryland</u>, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." <u>Justices</u>, 466 U.S. at 307–08 (citation and footnote omitted).

The clearly established federal standard applicable to claims of breached plea agreements is set forth in <u>Santobello v. New York</u>, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." <u>Santobello</u>, 404 U.S. at 262. The Supreme Court outlined two remedies available to rectify the government's breach of a plea agreement: (1) rescission of the agreement, that is, withdrawal of the guilty plea, or (2) specific performance of the agreement, "in which case petitioner should be resentenced by a different judge." 404 U.S. at 263; *see also* <u>Puckett v. United States</u>, 556 U.S. 129, 137, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). "[A] breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." <u>Puckett</u>, 556 U.S. at 137–38 (emphasis in original).

        2.      Federal Review of State Court Decision

As previously discussed, Petitioner raised these claims as Grounds One and Two in his Rule 3.850 motion (Ex. DD at 5–15). The state circuit court adjudicated the claims as follows:

        **Ground I**—The Defendant first argues that his sentence of 15 years DOC for robbery is the product of double jeopardy and cannot stand. The written plea

agreement specifically read that the Defendant was entering a plea to the charge of robbery and that the maximum sentence he could receive would be 15 years DOC.[FN 1]   At the plea hearing, the Court announced that the Defendant was entering into a plea to one count of robbery without a weapon.[FN 2]   The Court, after accepting the plea, imposed a sentence of 15 years DOC.  Since the Defendant's sentence is consistent with the plea agreement and within the statutory maximum, there is no double jeopardy and this ground is denied.

[FN 1:  Exhibit A.]

[FN 2:  Exhibit B.]

**Ground II**—The Defendant claims that the trial court erred by failing to "adhere to the oral and written plea agreement. . . ."  Specifically, the Defendant claims that he actually entered a plea to the offense of robbery by sudden snatching as opposed to robbery.

The fact that the Defendant cited to section 812.131(2)(b), robbery by sudden snatching, at the plea hearing is not controlling.  The Defendant signed a written plea agreement for one count or [sic] robbery, not robbery by sudden snatching.  The Court then asked the Defendant if he had read and understood the terms of the written agreement.  The Defendant responded affirmatively.  The record is clear that the Defendant was entering a plea to robbery, not robbery by sudden snatching.  Since the Defendant was sentenced in accordance with his plea, this claim is denied without the need for an evidentiary hearing.

(Ex. DD at 125).  As previously discussed, Petitioner appealed the decision to the First DCA, and the appellate court affirmed without written opinion (Ex. GG).

The state court's adjudication of Petitioner's double jeopardy claim is entitled to deference. Petitioner argues jeopardy attached when the trial court accepted his plea to robbery under § 812.131(2)(b) (doc. 33 at 40–41).  He contends the court again placed him in jeopardy by adjudicating him guilty of robbery without a weapon under § 812.13(2)(c) and imposing sentence on that charge (*id.*).  Petitioner's adjudication of guilt and sentencing was "the natural progression of a single, continuous course of jeopardy."  *See* United State v. McIntosh, 704 F.3d 894, 900 (11th Cir. 2013).  The court proceeded on the original charging document, and the prosecution of that charge did not end when the court accepted Petitioner's guilty plea.  Because the original prosecution did not end, the adjudication of guilt and sentencing that proceeded from that original prosecution cannot be characterized as a second prosecution.  *See id.* (defendant's sentence based

on his guilty plea to drug-trafficking and weapons charges in original indictment that was dismissed for technical error after his conviction but before sentencing did not violate Double Jeopardy Clause, even though government placed defendant in double jeopardy by prosecuting second indictment on same charges, since defendant's sentencing was natural progression of single continuous course of jeopardy that attached once his guilty plea to original indictment was unconditionally accepted) (citing Schiro v. Farley, 510 U.S. 222, 230, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (refusing "to treat the sentencing phase of a single prosecution as a successive prosecution for purposes of the Double Jeopardy Clause")). Petitioner's conviction and sentencing was neither a second prosecution of, nor a second punishment for, the same offense. *See id.* (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)). Therefore, the state court's adjudication of Petitioner's double jeopardy claim was not contrary to or an unreasonable application of clearly established federal law.

The same cannot be said of the state court's adjudication of Petitioner's due process claim. The state post-conviction court determined there was a plea agreement, and it "specifically read that the Defendant was entering a plea to the charge of robbery and that the maximum sentence he could receive would be 15 years DOC," and that "Defendant signed a written plea agreement for one count o[f] robbery, not robbery by sudden snatching." As previously discussed, the federal habeas court must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1); Ward v. Hall, 592 F.3d 1144, 1177 (11th Cir. 2010). Clear and convincing evidence entails proof that a claim is "highly probable," a standard requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *See* Ward, *supra* (citing United States v. Owens, 854 F.2d 432, 436 n.8 (11th Cir.1998)). The Supreme Court described this standard as "demanding but not insatiable" and cautioned that "[d]eference does not by definition preclude relief." Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (quotation marks and citation omitted).

Here, the Plea and Sentencing Agreement, a copy of which is attached to this Report and Recommendation, provided that Petitioner was <u>currently charged</u> with robbery, which carried a

maximum sentence of fifteen (15) years (Ex. U at 25).  But with regard to the charge to which Petitioner was <u>entering a plea</u>, the Agreement provided:

> DEFENDANT PLEADS:    ___ GUILTY    <u>X</u>  NOLO CONTENDERE to the following:
>
> TERMS OF PLEA ENTRY AND SENTENCING AGREEMENT AGREED UPON BY THE STATE AND DEFENDANT
>
> No Prosecution on Agg. Assault 784.021 1(b) F.S.
>
> Nolo Contendere on Robbery 812.131 2(b) F.S.
>
> Sentence to be imposed As soon as possible
>
> . . . .
>
> 2.  ADJUDICATION OF GUILT IS:    ___ WITHHELD    ___ ADJUDICATED    <u>X</u>  DISCRETION OF COURT
>
> 3.  THE PRESENTENCE REPORT IS   <u>X</u>  ordered    ___ waived    ___ not required

(Ex. U at 25; *see also* attached Plea and Sentencing Agreement).  Although the Plea and Sentencing Agreement stated that the maximum penalty for the <u>charged</u> crime of robbery without a weapon, a violation of § 812.13(2)(c) and a second degree felony under that statute, was fifteen (15) years in prison, the Agreement stated that the charge to which Petitioner <u>agreed to plead</u> was robbery under § 812.131(2)(b), which is a third degree felony carrying a maximum penalty of five (5) years (*see id.*).  By signing the Plea and Sentencing Agreement, Petitioner acknowledged his understanding that the court <u>could</u> impose habitual felony offender ("HFO") and prison releasee reoffender ("PRR") enhancements, but the Agreement did not indicate the length of the enhanced sentences or the applicable mandatory minimums associated with the enhancements (*id.*).

The state court also unreasonably found that Petitioner's sentence was consistent with the Plea and Sentencing Agreement and within the statutory maximum for the crime to which he pleaded.  The record demonstrates that Petitioner's non-enhanced fifteen-year sentence exceeded the five-year statutory maximum for a violation of § 812.131(2)(b), which was the crime to which he pleaded according to the Plea and Sentencing Agreement.  These factual findings were the linchpin of state court's adjudication of Petitioner's claims.  Petitioner satisfied § 2254(d)(2) by demonstrating that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  Therefore, the state court's adjudication of Petitioner's due process claim is not entitled to deference, and this court must review the claim de novo.

The Eleventh Circuit generally applies principles of contract law to the construction of plea agreements, as adapted for the purposes of criminal law.  *See* <u>United States v. Rubbo</u>, 396 F.3d

1330, 1334 (11th Cir. 2005) (citing <u>United States v. Howle</u>, 166 F.3d 1166, 1168 (11th Cir. 1999) ("A plea agreement is, in essence, a contract between the Government and a criminal defendant.")); <u>Allen v. Thomas</u>, 161 F.3d 667, 671 (11th Cir. 1998) ("[W]e have said that the construction of plea agreements is governed generally by the principles of contract law, as we have adapted it for purposes of criminal law. . . ."); <u>United States v. Weaver</u>, 905 F.2d 1466, 1472 (11th Cir. 1990); <u>United States v. Jefferies</u>, 908 F.2d 1520, 1523 (11th Cir. 1990) ("Plea agreements are interpreted and applied in a manner that is sometimes likened to contractual interpretation.").

"A basic tenet of contract law is that a written agreement which is unambiguous on its face should be interpreted and enforced accordingly." <u>Weaver</u>, 905 F.2d at 1472. In determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and "must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." <u>In re Arnett</u>, 804 F.2d 1200, 1202–03 (11th Cir. 1986) (citations omitted); *see also* <u>United States v. Thomas</u>, 487 F.3d 1358, 1360 (11th Cir. 2007) (whether the government violated the agreement is judged according to the defendant's reasonable understanding of the agreement when he entered the plea; if the parties dispute the meaning of the plea agreement, the court must interpret the terms of the plea agreement based on objective standards) (citing <u>United States v. Rewis</u>, 969 F.2d 985, 988 (11th Cir. 1992)); <u>Johnson v. Beto</u>, 466 F.2d 478, 480 (5th Cir. 1972) (the contract, once created, is to be interpreted in accordance with the objective import of its unambiguous terms). In interpreting a plea agreement, the court does not accept a "hyper-technical reading of the written agreement" or "a rigidly literal approach in the construction of the language." <u>Jefferies</u>, 908 F.2d 1520, 1523 (11th Cir. 1990). The "written agreement should be viewed against the background of the negotiations and should not be interpreted to 'directly contradic[t] [an] oral understanding.'" *Id.*

"Only where the language of the agreement is ambiguous, or where government overreaching is alleged does the court consider parol evidence. . . ." <u>Raulerson v. United States</u>, 901 F.2d 1009, 1012 (11th Cir. 1990) (citation omitted); *see also* <u>United States v. Copeland</u>, 381 F.3d 1101, 1105 (11th Cir. 2004). When a plea agreement is ambiguous, it must be read against the government and in favor of the defendant. <u>Raulerson</u>, 901 F.2d at 1012 (citing <u>United States v. Harvey</u>, 791 F.2d 294, 300 (4th Cir.1986) ("[B]oth constitutional and supervisory concerns require

holding the government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements.")); <u>Jeffries</u>, 908 F.2d at 1523. "The rationale for this approach to interpretation is that 'a plea agreement must be construed in light of the fact that it constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea.'" <u>Copeland</u>, 381 F.3d at 1105 (quoting <u>Jefferies</u>, 908 F.2d at 1523).

In <u>Weaver</u>, the Eleventh Circuit approved the following analysis for interpreting and enforcing plea agreements:

> . . . whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, . . . .

<u>Weaver</u>, 905 F.2d at 1472 (quoting <u>Harvey</u>, 791 F.2d at 300); *see also* <u>Copeland</u>, 381 F.3d at 1106 (first step in examining whether the government breached the plea agreement is determining whether the language of plea agreement is ambiguous; if it is not, the court is limited to the unambiguous meaning of the language of the agreement).

Prior to reaching the issue of construction of the Plea and Sentencing Agreement, the court must address Respondent's argument that there was no plea agreement between Petitioner and the State. Respondent argues the prosecutor never agreed to the written terms of the Plea and Sentencing Agreement, rather she signed only the "DNA acknowledgment." Respondent further contends the prosecutor did not write "lesser included offense" or "LIO" on the Plea and Sentencing Agreement, which was her routine practice if she agreed to dismiss the greater charge in favor of a lesser included offense. To support this argument, Respondent requested expansion of the record in this case to include the affidavit of Susan Ann Martinez, the prosecutor in Petitioner's state criminal case (doc. 48). The district court granted Respondent's motion to expand the record (doc. 53). Ms. Martinez states in the affidavit that she signed the DNA certification attached to

Petitioner's Plea and Sentencing Agreement (doc. 48, Ex. KK, Affidavit of Susan Ann Martinez ¶ 4). She further states:

> As best I can recall my signature on the DNA certification was not an agreement to the written terms of that document. Typically, I would not sign any written plea agreement that did not include either a definite sentence or an expressed sentencing range. If the defendant were pleading as charged and left sentencing to the court's discretion, I typically would not participate in a written plea agreement. Further, to my recollection, my signature on the DNA certification was not a mistake, but was a place I typically signed because it was only used to certify that there was not any known exculpatory evidence to use against the defendant.
>
> Further, I can state with certainty from the plea document itself that I certainly did not agree to the entry of a plea for a lesser, included offense or other lesser offense than the offense charged. . . . The "Plea and Sentencing Agreement" document does not contain the words "lesser included offense" or "LIO," so I know that I did not agree to the entry of a plea for a lesser, included offense or other lesser offense than the offense [ ] charged.

(Martinez Aff. ¶¶ 4, 5).

At the evidentiary hearing before the undersigned, Ms. Martinez, testified that at the time of Petitioner's plea, the Plea and Sentencing Agreement used in Petitioner's case (*see* attached Plea and Sentencing Agreement) was the standard plea agreement used in all cases (doc. 86 at 123–24, 141–42). She testified that if there was a plea agreement between the State and a defendant, the terms of the agreement were represented on that standard plea agreement form (*id.* at 142). She testified that the "Certificate of State Attorney" page, which the parties refer to as the DNA acknowledgment or DNA certification, was part of the standard written plea agreement and appeared as the fifth page of the standard plea agreement, even though it was unnumbered, and it was always placed between pages numbered four and five (*id.* at 155–57). Ms. Martinez testified she did not always have time to read the entire plea agreement in a case, but she would read any handwritten terms, and if she did not agree with something she would "mark it off" or a new plea agreement form would be prepared (*id.* at 143). She testified she did not prepare Petitioner's Plea and Sentencing Agreement, nor did she verify the handwritten statute number of the robbery offense included in the section of the agreement which set forth the terms agreed upon by the State and Petitioner (*id.* at 125, 145). She testified she only looked at the title of the offense, and "when I saw robbery, it

matched the top as Count One robbery, so it looked the same to me" (*id.* at 125–26, 145).  Ms. Martinez testified it was unusual to include the statute number of the offense in a plea agreement, and usually only the title of the offense was written on the plea agreement (*id.* at 126, 145).  She testified that despite this unusual term, and despite the fact she had her statute book with her and could have checked the statutory citation, she did not do so (*id.* at 145–46).

Ms. Martinez then retracted from the statement in her affidavit suggesting that her signature on the DNA certification page of Petitioner's Plea and Sentencing Agreement, instead of under Petitioner's signature, was not an indication that she agreed to the terms as stated in the written agreement.[4]  At the evidentiary hearing Ms. Martinez testified as follows regarding her practice of signing plea agreements:

Q [by counsel for the State].  Can you explain what you meant in your affidavit about the DNA certification?

A.  The DNA certification was where I signed on the plea agreement whether or not there was any DNA that could—I'm sorry.

Q.  Exonerate?

A.  . . . exonerate the defendant, and if I signed it, then there was no DNA that I was aware of.

Q.  And you indicated, I believe, in your affidavit that that was not an indication of that agreement?

A.  That is correct.

Q.  Is it possible that you might have made a mistake and that in recalling, that you did not sign the DNA portion only when it was an open plea?

A.  Yes.  Actually, when I wrote the affidavit, I was—I took a lot of time thinking about this because I couldn't really remember what I did every time, and I

---

[4] As previously noted, Ms. Martinez also stated in her affidavit that she signed only the DNA certification when a defendant was entering an "open plea," and she was not participating in the written plea agreement (meaning, the defendant was entering a plea to the crime charged with no agreement between the defendant and the State as to the sentence or a sentencing range), and that she did so to certify that there was no known exculpatory evidence to use against the defendant.

thought when I wrote this that I did only sign the DNA portion when it was a plea up the judge.

. . . .

A. I signed on the DNA form almost—from what I can remember, yes, always on the DNA. From what I remember, I also signed on another page, and even though I have looked at your copies here [of plea and sentencing agreements she signed in other cases she prosecuted near the time she signed Petitioner's Plea and Sentencing Agreement (*see* Petitioner's Evidentiary Hearing Exhibits P1A–G)] and my signature is not on them, underneath the defendant's signature, I did hundreds of these, and if I missed a couple of them, it was maybe this one went too fast. Mr. Haug [Petitioner's defense counsel, a public defender, who regularly represented defendants prosecuted by Ms. Martinez (*see* doc. 86 at 77–78, 106, 108–09, 115, 141, 143–44)] would hand it to me, look at it and then put it over to the DNA page for my signature, and sometimes I would forget, apparently. When I wrote this affidavit, this was many, many years after I had left the State Attorney's Office.

Q [by Petitioner's counsel, Attorney Keith]. I understand. I was just trying to ask you about your memory. Obviously, you can't look at all of the forms that you signed over your time there, but just to tell you, I mean, I pulled just randomly these cases by case number around this same case number of Mr. Boswell, and I think there's seven there or so, and they're all where you did not sign below the defendant's signature, correct?

A. Right, but they're done on different dates, as well, even though the case numbers are around the same time, my signature on them are different dates, there's some in April, there's some in February.

Q. I understand. And these other plea and sentencing agreements, have some more detailed recommendations or agreements as to what the sentence would be. I know there is one with a lesser included offense, but others have other terms of the agreement?

A. Yes, probation; these were the ones that I agreed to, yes.

Q. But you agreed to that but didn't sign under the defendant's signature on those, correct?

A. That's correct.

(doc. 86 at 130–31, 144–45). Ms. Martinez thus admitted that she sometimes agreed to the written terms of the plea and sentencing agreement even though she did not sign under the defendant's signature and signed only the DNA certification page. The plea agreements she signed in other

cases were admitted as exhibits at the evidentiary hearing (*see* Petitioner's Evidentiary Hearing Exhibits P1A–G). The plea agreements in those cases included agreements wherein the parties agreed the defendant would plead to the offense charged, as well as cases in which the parties agreed the defendant would plead to a lesser included offense (*id.*).

Based upon this evidence, the undersigned concludes the State was a party to the Plea and Sentencing Agreement in Petitioner's case, and agreed to its written terms.

Having determined that the State was a party to the Plea and Sentencing Agreement and agreed to the written terms included therein, the next issue is whether the Plea and Sentencing Agreement was ambiguous or unambiguous on its face with regard to the term setting forth the offense to which the parties agreed Petitioner would plead nolo contendere. As previously discussed, the court must apply an objective standard and view the terms against the background of the negotiations. The commencement of the relevant plea negotiations in this case occurred at a pre-trial hearing on August 2, 2007. During a <u>Faretta</u> inquiry,[5] Petitioner proposed the following plea agreement in open court:

> MR. BOSWELL: . . . I was arrested and charged with robbery and aggravated assault. I'm willing today, if the state will agree to no prosecution on the aggravated assault, statute 774.021(1)(b) Florida Statutes, I'll plead nolo contendere to the robbery, statute <u>812.131(2)(b)</u> Florida Statutes, waive the PSI and you can sentence me today at your discretion if you'll let me be heard and tell my side of the story. The plea agreement's signed.

> MRS. MARTINEZ [the prosecutor]: The state has no objection. There is a PRR and an HFO filed in that and the state has no objection to that.

(Ex. B at 49) (emphasis added).[6] The trial court recessed the proceedings to allow Petitioner, defense counsel (Mr. Haug), and Ms. Martinez to discuss Petitioner's plea agreement. Each of the parties testified at the federal evidentiary hearing regarding their off-the-record discussions during the recess. Petitioner and Mr. Haug testified they discussed and modified terms on the first two

---

[5] <u>Faretta v. California</u>, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (if a defendant makes an unequivocal request for self-representation, the trial court is obligated to hold a hearing, to determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel).

[6] As previously noted, the information charged Petitioner with robbery in violation of Fla. Stat. § <u>812.13(2)(c)</u>.

pages of the Plea and Sentencing Agreement to provide that a presentence report would not be waived, sentencing would not occur that day, the sexual predator/offender provisions in paragraphs 16, 17, and 18 would not apply, and the court could impose an HFO and PRR sentence (doc. 86 at 26–30, 32, 113). Petitioner testified Mr. Haug reviewed the rights enumerated on the first page of the Plea and Sentencing Agreement, and Mr. Haug marked each right as he discussed it with Petitioner (*id.* at 28, 32). Petitioner testified he and Mr. Haug did not discuss the offense to which Petitioner was entering a plea (*id.* at 32).

Mr. Haug testified that the statutory citation to robbery by sudden snatching appeared in the terms of the Plea and Sentencing Agreement as the offense to which Petitioner would enter a plea, but "the statute numbers mean very little to me," and he did not realize that the citation was for an offense different from the offense charged (doc. 86 at 88, 99, 103–04).

As previously noted, Ms. Martinez testified she looked at the title of the offense on the Plea and Sentencing Agreement when Mr. Haug presented it to her during the recess, and she saw the statutory citation of the offense to which Petitioner agreed to plead, but she did not verify the statutory citation, even though she had a statute book with her (doc. 86 at 125–26, 145–46). The statutory citation was also available on the seventh page of the nine-page Plea and Sentencing Agreement, which page is titled "Addendum to Sentencing Recommendation (Required DNA Specimen Collection pursuant to Section 943.325, Florida Statutes)" (*see* attached Plea and Sentencing Agreement).[7] Mr. Martinez admitted it was unusual for a Plea and Sentencing Agreement to include a statutory citation (*id.* at 125–26, 145). Finally, Ms. Martinez testified she agreed not to prosecute Petitioner for aggravated assault, as indicated in the Plea and Sentencing Agreement (*id.* at 135, 158).

---

[7] Petitioner testified at the evidentiary hearing that he brought the nine-page Plea and Sentencing Agreement with him to the state court from the jail on August 2, 2007, and that the document consisted of the nine (9) pages attached to this Report and Recommendation, which were stapled together (doc. 86 at 47–48). Ms. Martinez testified that the nine-page document was the standard plea agreement used in criminal cases at that time (*id.* at 123–24, 141–42), although she stated she could not recall whether the last four pages (the "Addendum to Sentencing Recommendation (Juvenile Offenders)," "Addendum to Sentencing Recommendation (Required DNA Specimen Collection pursuant to Section 943.325, Florida Statutes)," and "Addendum to Sentence Recommendation, Minimum Costs for Misdemeanor and Driving Under the Influence or Boating Under the Influence)" were always included (*id.* at 156–57). The court notes that all nine pages were included in the "sample" plea agreements she signed in other cases, which were admitted as exhibits at the evidentiary hearing (*see* Petitioner's Evidentiary Hearing Exhibits P1A–G).

Viewing the terms of the Plea and Sentencing Agreement against the background of the negotiations, the undersigned concludes the Plea and Sentencing Agreement was unambiguous with regard to the offense to which Petitioner agreed to enter a nolo contendere plea. On its face, the Plea and Sentencing Agreement expressly cited Florida Statutes § 812.131(2)(b) as the statutory citation of the offense to which Petitioner agreed to plead (*see* attached Plea and Sentencing Agreement). Although the citation was technically incorrect in that it omitted the parentheses around paragraph 2 and read "812.131 2 (b)", the term is objectively, reasonably interpreted as referring to Florida Statutes § 812.131(2)(b).[8] The term may <u>not</u> be reasonably interpreted as referring to § 812.13(2)(c), the crime charged, because such an interpretation would require the interpreter to omit a number (the "1" at the end of "812.131") and substitute a completely different letter ("c" for "b") as the subparagraph to paragraph (2). Therefore, the Plea and Sentencing Agreement is objectively interpreted as providing that Petitioner agreed to plead nolo contendere to a violation of Florida Statutes § 812.131(2)(b), which is robbery by sudden snatching.

Even if the Plea and Sentencing Agreement was deemed ambiguous on its face with regard to the crime to which Petitioner agreed to enter a plea (based upon the absence of the parentheses and the title "Robbery" instead of "Robbery by sudden snatching"), the parole evidence supports Petitioner's reasonable interpretation that the terms provided he would plead nolo contendere to robbery by sudden snatching under § 812.131(2)(b), a third degree felony carrying a five-year maximum, with the possibility that the court would impose an HFO and/or PRR enhancement.[9] The only other plea offer that had been extended by Ms. Martinez was a non-enhanced (without the PRR or HFO enhancement) sentence capped at ten (10) years if Petitioner agreed to plead as charged "at the first time we were up in front of the Judge" (doc. 86 at 42, 140–41). Therefore, the terms of the Plea and Sentencing Agreement reflected a modification of both parties' positions—Petitioner would

---

[8] At the evidentiary hearing, Mr. Haug agreed that the statutory citation written on the Plea and Sentencing Agreement was the citation to robbery by sudden snatching (doc. 86 at 104). The court also notes that the statutory citation to the offense Ms. Martinez agreed to nolle prosse, aggravated assault, was similarly technically incorrect (the citation on the Plea and Sentencing Agreement read "784.021 1(b)", but the correct citation is 784.021(1)(b)).

[9] Although Mr. Haug and Ms. Martinez testified at the evidentiary hearing that they were aware that robbery qualified for PRR but robbery by sudden snatching did not (doc. 86 at 82–87, 93–96, 127–30, 138, 147–49, 151–54), there is no evidence Petitioner was aware of that (*id.* at 42).

agree to a possible sentence enhancement, and the prosecutor would agree to a lesser degree offense (as previously noted, Petitioner faced no possibility of a PRR enhancement on the lesser offense to which he pleaded (although there is no evidence he knew this), but he did face the possibility of a HFO enhancement on the lesser offense, which enhancement—if applied—would have increased the maximum sentence for robbery by sudden snatching from five (5) years to ten (10) years; thus, the agreement proposed by Petitioner did not dramatically depart from the agreement initially proposed by the State). Further, Petitioner testified at the evidentiary hearing that he believed that robbery by sudden snatching was consistent with the factual basis of the charge (*id.* at 43–45, 50). This belief was not unreasonable from a layman's perspective. The police report states that Petitioner entered a bank, handed the teller a note that said give me all the money or I will kill everyone, told the teller she had three seconds to comply, then jumped onto or over the counter, began grabbing the teller's money, fell off the counter, and then rushed out the front door (Ex. U at 6–7).

Additionally, the discussions during the reconvened plea proceeding do not suggest that Petitioner's understanding that he was entering a plea to a violation of 812.131(2)(b) was unreasonable. When the proceeding reconvened, Mr. Haug announced, "Under the terms and conditions of the plea agreement we would enter a no contest plea as charged on the robbery. The aggravated assault would be dismissed and we'd request a PSI be ordered and sentencing as soon as possible." (Ex. B at 52). Petitioner asserts, however, that he did not hear defense counsel's announcement because he was making his way to the defense podium, while handcuffed, shackled, and wearing a waist chain which made a lot of noise (doc. 33 at 27–28; doc. 86 at 33). At the evidentiary hearing, Mr. Haug testified he could not recall where Petitioner was when he (Haug) announced that Petitioner was going to plead to the crime "as charged" (doc. 86 at 111). Further, although the trial court clarified at the end of the colloquy whether the offense was with or without a weapon, the court did not clarify the offense itself (the offense with which Petitioner was charged <u>and</u> the reduced charge to which he pleaded were both without a weapon).[10] The remainder of the

---

[10] The trial court asked, "And you're entering a plea today to the offense of robbery—is it without a weapon?" (Ex. B at 53). The transcript reflects the prosecutor responded, "Yes, sir," and Mr. Haug responded, "Without a weapon, yes, sir." (*id.*).

plea hearing was a discussion between the court and counsel of the maximum sentence the court could impose if it determined that the HFO and PRR applied (Ex. B at 53–57). The court inquired of Petitioner whether he understood that the State would ask for a sixteen-year HFO sentence with a PRR minimum mandatory of fifteen years, and Petitioner responded, "I heard what she said, yes, sir" (*id.* at 54–55). However, Petitioner's failure to argue the legality of the State's proposed sentence at that point, when it was agreed that sentencing would occur on a later date, does not undermine the reasonableness of Petitioner's understanding of the crime to which he pleaded nolo contendere.

The undersigned is also unconvinced by Respondent's argument that Petitioner induced the prosecutor's mistake as to the offense to which he was pleading and thus should not benefit from the mistake. Petitioner announced in open court that he would plead nolo contendere to robbery under 812.131(2)(b), and he expressly cited that statute in the written Plea and Sentencing Agreement. The prosecutor's mistaken belief that Petitioner was pleading nolo contendere to robbery as charged could have been avoided by her simply verifying the statutory citation before she signed the plea agreement.[11]

Further, neither Petitioner's failure to interject at sentencing when the parties were arguing about his possible sentences with and without the enhancements, nor his failure to accept the court's offer to withdraw his plea, suggests a deliberate effort on Petitioner's part to hide the prosecutor's mistake until after sentencing. At the sentencing hearing on September 11, 2007, Mr. Haug opposed imposition of a PRR or HFO sentence on the ground that the State failed to comply with the statutory notice provisions (Ex. B at 61–66). Haug requested that the court sentence Petitioner in accordance with the sentencing guidelines, which provided Petitioner's lowest permissible prison sentence was just under three (3) years (35.4 months) (Ex. B at 62–63; Ex. U at 85–87). The prosecutor agreed that the statute required service of the notice prior to entry of the plea (Ex. B at 65–66) (emphasis added). The trial court was clearly under the impression that Petitioner agreed

---

[11] Ms. Martinez testified that defense counsel, in public defender cases, normally prepared the Plea and Sentencing Agreements, and that she normally did so in cases with private counsel (doc. 86 at 141–42). In this instance, Petitioner prepared the agreement. To the extent Ms. Martinez knew Petitioner did so, she had a heightened obligation to carefully review the agreement before signing it. And even if she did not know Petitioner prepared it, she clearly knew she did not prepare it, and thus her obligation to carefully review it before signing it remained.

to a fifteen-year enhanced sentence as part of the Plea and Sentencing Agreement (when in fact there was no agreement as to Petitioner's sentence, and Petitioner merely acknowledged his understanding that the court <u>could</u> impose an HFO and/or PRR enhancement (*see* Ex. U at 25–33)), and the court was determined to require Petitioner to accept that sentence or withdraw his plea, which would allow the State to correct its notification error and seek a mandatory minimum sentence of thirty (30) years on the originally charged crime (*id.* at 62–66). The following heated exchange occurred between the court and the defense:

> THE COURT: What does he want, thirty years or fifteen years?
>
> MR. HAUG: Well, your Honor, we'd like less than 15 years.
>
> THE COURT: He's not going to get less than 15 that he plead to.
>
> MR. HAUG: Yes, your Honor.
>
> THE COURT: Now, do you want to come back later and roll the dice for 30 or do you want the 15? To take the 15 you have to waive serving—
>
> MR. GERALD BOSWELL: I don't care what you do, Your Honor. How about that? I'm going to appeal it anyway.
>
> THE COURT: Your [sic] what?
>
> MR. GERALD BOSWELL: I'm going to appeal it anyway. You've violated every right I got. Whatever you do today, I'm going to give it back to you. We're going to do it again one day.
>
> MRS. MARTINEZ: We'd ask the court to withdraw the plea then if he's—
>
> THE COURT: Okay. You can withdraw your plea and go to trial. How's that?
>
> MR. GERALD BOSWELL: All right.
>
> THE COURT: Good deal.
> . . . .
> MRS. MARTINEZ: If we could have the November docket, your Honor, I just spoke to my victim yesterday or actually Sunday—

THE COURT:  Reset it off until November.

(*id.* at 66–68).  At that point, Petitioner requested that the judge recuse himself (*id.* at 68).  The judge responded that a written motion to disqualify was required, and if Mr. Haug filed one, he would grant it (*id.* at 68–69).  Because disqualification was off the table (in the absence of a written motion), Mr. Haug and Petitioner requested that the court proceed to sentence Petitioner (*id.* at 69). With the trial court's permission, another prosecutor, Mr. Grinsted, attempted to make Petitioner choose between waiving the HFO notice requirement and withdrawing his plea (*id.* at 69–72).  At the conclusion of their exchange, Petitioner stated:

> MR. GERALD BOSWELL:  It is my original desire to go to sentencing just like we were supposed to do today after having a hearing to determine if I qualify as HFO and PRR, prison release [sic] reoffender, and the state had just served me this notice right here and we've objected, and if you think the District Court of Appeals will uphold that conviction and you're satisfied, then impose the sentence.

> MR. GRINSTED:  The question is would you like to withdraw your plea.

> MR. GERALD BOSWELL:  No, I don't want to withdraw the plea.
> . . . .
> THE COURT:  He's <u>charged</u> with robbery with no firearm or weapon.  What is the statutory sentence—is that a felony of the second degree?

> MRS. MARTINEZ:  It's a second degree felony, yes, your Honor.

> THE COURT:  So he can get 15 years without an HFO?

> MRS. MARTINEZ:  That's correct, your Honor.  It's the PRR that's a mandatory 15 years.  The HFO—

> THE COURT:  Well, let's just forget about the HFO and the PRR and give him the statutory sentence of 15 years.
> . . . .
> THE COURT:  All right.  I'm going to sentence you as just a regular felony offender under a second degree felony to 15 years disregarding HFO and PRR.  That doesn't even apply in your case at this time.  You get the maximum statutory sentence of 15 years.
> . . . .
> MRS. MARTINEZ:  And the court—could you please state on the record the reasons why for [sic]—

THE COURT: Well, because there was some technical problem with whether or not he was served with the HFO notice prior to the entry of the plea, which he did back on some other date, and rather than worry about that technicality I'm just sentencing him without the HFO and the PRR being an issue. Okay? Did we get all that on the record? Sir, do you want anything else on the record?

MR. GERALD BOSWELL: No.

(Ex. B at 72–75) (emphasis added).

Petitioner explained at the federal evidentiary hearing:

At that point, I was really, really angry with the Judge for trying to assist the State in correcting their error. I was angry that I didn't get to represent myself. I did know that the 15 years was an illegal sentence, but I felt like that it would be much better to file a motion to correct an illegal sentence than it would to try to go forward with the heated discussion that had come up prior to that.

And with the Judge threatening me with 30 years, 30 years, I was like—I was just trying to get out of here [sic] and not get 30 years at this point, and so I just didn't say anything else.

. . . .

I felt like I was getting railroaded and it scared me and I just didn't say nothing [sic] more. I got angry and I blew up and I said stuff I wished I hadn't have said, but I didn't know what else to do.

Q. So you decided to raise the issue later after the proceeding, correct?

A. Yes, sir.

(doc. 86 at 43, 52).

In light of the trial court's expressed readiness to throw out the Plea and Sentencing Agreement upon Petitioner's challenging the legality of the sentence enhancement, it is no wonder Petitioner believed it prudent to assert any other challenges to the legality of his sentence through post-conviction motions. Petitioner did just that. His Judgment and Sentence was rendered September 27, 2007 (Ex. U at 79–84), and on October 11, 2007, the clerk of court received Petitioner's Motion to Enforce Plea Agreement, in which he requested that the court sentence him in accordance with the plea agreement, which provided he entered a plea to a violation of § 812.131(2)(b) (*see* Ex. A at 1–3).

Based upon the foregoing, the undersigned concludes that the Plea and Sentencing Agreement was unambiguous with regard to the term providing that the offense to which Petitioner was pleading nolo contendere was a violation of Florida Statutes § 812.131(2)(b).  And, even if the Plea and Sentencing Agreement was ambiguous with regard to the offense to which Petitioner was pleading, the evidence supports Petitioner's reasonable understanding that he was pleading to a violation of § 812.131(2)(b).  Further, the prosecutor's mistaken understanding that Petitioner was pleading to a violation of § 812.13(2)(c) as charged in the Information was not induced by Petitioner.  Therefore, the Plea and Sentencing Agreement should be interpreted and enforced according to its terms.  *See* Weaver, 905 F.2d at 1472.  Petitioner's conviction and sentence did not comport with the terms of the Plea and Sentencing Agreement.  He was convicted of violating § 812.13(2)(c), instead of § 812.131(2)(b), and sentenced to the fifteen-year maximum for a second degree felony, which exceeded the five-year statutory maximum for the third degree felony to which he pleaded.  The state court's failure to convict and sentence him in accordance with the Plea and Sentencing Agreement thus affected petitioner's substantial rights.[12]

The remaining issue is the remedy for the State's breach of the plea agreement.  The choice of remedies is within the sentencing court's discretion.  *See* Santobello, *supra*; United States v. Al-Arian, 514 F.3d 1184, 1190 (11th Cir. 2008) (citing Santobello).  However, specific performance of the agreement, as opposed to withdrawal of the guilty plea, is the favored remedy in the Eleventh Circuit.  *See* United States v. Johnson, 132 F.3d 628, 631 (11th Cir. 1998) (citing Santobello); United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) (citing Santobello).  Furthermore, "[s]pecific performance is particularly appropriate where [ ] no question exists that the plea was knowingly and voluntarily entered."  Johnson, 132 F.3d at 631 (citing United States v. Tobon-Hernandez, 845 F.2d 277, 280–81 (11th Cir. 1988)).  Florida courts also follow the rule that the

---

[12] In Puckett v. United States, 556 U.S. 129, & 140–43 & n.3, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009), the Supreme Court noted that Santobello's automatic-reversal rule may not have survived its elaboration of harmless error principles in cases such as Arizona v. Fulminante, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (a plea breach does not "defy analysis by 'harmless-error' standards" by affecting the entire adjudicatory framework) and Neder v. United States, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L .Ed. 2d 35 (1999) (a plea breach does not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence"), where, as here, the defendant did not preserve the plea breach issue by objecting to the breach at sentencing.  However, even under a harmless error standard, Petitioner would be entitled to relief.

*sentencing court* must assess the remedy due for the breach, either specific performance or withdrawal of the plea. *See* Hunt v. State, 613 So. 2d 893, 899 (Fla. 1992); Tillman v. State, 522 So. 2d 14 (Fla. 1988). Some Florida appellate courts follow the rule that a defendant's choice of remedies should be followed, especially where the other remedy would not remedy the defendant's loss (*see* McCullough v. State, 974 So. 2d 1214, 1218 (Fla. 2d DCA 2008); Mehl v. State, 958 So. 2d 465, 468 (Fla. 4th DCA 2007); Buffa v. State, 641 So. 2d 474, 475 (Fla. 3d DCA 1994); Spencer v. State, 623 So. 2d 1211, 1213 (Fla. 4th DCA 1993)). The Florida Supreme Court, however, has followed the rule that withdrawal of the plea is not the proper remedy where, as here, the plea is otherwise shown to be voluntary (*see* Hunt, Tillman, *supra*; *see also* Mehl, *supra*.). Because the United States Supreme Court declared that the choice of remedies is within the sentencing court's discretion, even though one remedy may be favored over another, this federal court should leave the choice of remedy to the state court.

## IV.  CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 15) be **CONDITIONALLY GRANTED** only as to Petitioner's claim that his conviction and sentence for violating Florida Statutes § 812.13(2)(c), when the Plea and Sentencing Agreement provided he would plead nolo contendere to a violation of Florida Statutes § 812.131(2)(b), violated federal due process, and that Petitioner be released from custody with regard to Okaloosa County Circuit Court Case No. 2007-CF-205, **UNLESS** within **SIXTY (60) DAYS** from the date of judgment in this case, the state court holds a hearing to determine the appropriate remedy for the State's breach of the Plea and Sentencing Agreement.

2.      That the amended petition for writ of habeas corpus (doc. 15) be **DENIED** as Petitioner's double jeopardy claim.

3.      That a certificate of appealability be **DENIED** as to Petitioner's double jeopardy claim.

At Pensacola, Florida, this <u>26th</u> day of September 2013.


/s/ *Elizabeth M. Timothy*
_____
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**